UNITED STATES of America, ex rel. Louis KOERNER, Jr.

v.

CRESCENT CITY E.M.S., INC., d/b/a Medic One, Medic One Ambulance Services, Inc., American Medical Response, Inc., Jerry Varanay, Sue Birou, and Bonnie Edwards.

Civil Action No. 95–0979.

United States District Court, E.D. Louisiana.

Sept. 5, 1996.

Louis Roy Koerner, Jr., New Orleans, Louisiana, for United States of America, ex rel. Louis R. Koerner, Jr., plaintiff.

Richard C. Stanley, Rachel Wendt Wisdom, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, Louisiana, for Crescent City E.M.S., Inc. d/b/a Medic One, defendant.

William David Aaron, Jr., Nancy Eleanor Graham, Phelps, Dunbar, L.L.P., New Orleans, Louisiana, for Medic One Ambulance Services, Inc., American Medical Response, Inc., Jerry Varanay, Sue Birou, and Bonnie Edwards, defendants.

Margaret M. Groome, United States Attorney's Office, New Orleans, Louisiana, for United States of America, movant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court are: (1) Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction;[1] and (2) Relator Louis Koerner, Jr.'s ("Koerner's") Motions to File and Process Copy of his Ex Parte Motion to Add Michael Sampson, Sr. as Additional Party Plaintiff, to Designate Michael Sampson, Sr. as the Real Party in Interest, and to Amend the Caption to Reflect Mr. Sampson's Capacity as Relator and for a Court order allowing the substitution of Mr. Sampson as relator. Koerner, the relator in this matter, filed formal opposition to the defendant's Motion to Dismiss.[2] Defendants jointly filed memoranda in opposition to Koerner's Motion to Add Michael Sampson, Sr. ("Sampson") as additional party plaintiff or to substitute Sampson as relator in the case at bar.[3] An oral/evidentiary hearing was set for August 29, 1996, at 9:00 a.m. o'clock at which time counsel appeared, and presented evidence and argument to the Court regarding the jurisdictional issue.

## I. BACKGROUND.

On March 24, 1995, the instant *qui tam* action was filed under seal by Louis R. Koerner, Jr. ("Koerner") as relator against defendants, Crescent City E.M.S. Inc. ("Crescent City"), Medic One Ambulance Services, Inc. ("Medic One"), American Medical Response, Inc. ("AMR"), Jerry Varanay ("Varanay"), Sue Birou ("Birou") and other defendants. In his March 24, 1995 complaint filed pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, Koerner relates that he obtained information from Michael Sampson, Sr., a former employee of Medic One, and from his [Koerner's] own investigation, and that he [Koerner] is the original source to the United States of the information set forth in the complaint.[4] Koerner further relates that "[t]he Medic One defendants, throughout a period beginning no later than June, 1993 to the personal knowledge of Michael Sampson, Sr., and on information and belief, *beginning on October 1, 1990 and continuing*

1. Defendants' Joint Motion to Dismiss is premised on the documents of record and prior lawsuits instituted by Koerner as counsel, *inter alia*, which arguably demonstrate that he has no standing to bring this *qui tam* action and that the Court is without subject matter jurisdiction. Citing 31 U.S.C. § 3730(e)(4)(A–B), defendants assert the information upon which Koerner's pending *qui tam* complaint is in large part "based upon" information publicly disclosed in: (1) the prior *qui tam* suit filed with this Court entitled, *United States ex rel. Federal Recovery Services, Inc. v. Crescent City E.M.S., Inc., et al.* (Civ.A. No. 91–4150), 1993 WL 345655 (E.D.La. August 30, 1990), *aff'd*, 72 F.3d 447 (5th Cir.1995); and (2) two prior suits filed by Koerner on behalf of Priority E.M.S./Michael Boatright against Crescent City E.M.S. in Louisiana state court. Defendants contend that Koerner is not the "original source" of the information upon which his allegations are based and his complaint is just that type of parasitic lawsuit that Congress sought to obviate through the enactment and amendment of the False Claims Act.

2. Koerner argues the subject of the instant False Claims Act complaint has nothing whatsoever to do with the subject of the prior *Federal Recovery Services qui tam* litigation (i.e., a fraudulent scheme orchestrated by Crescent City, Varanay and others involving fraudulent claims for reimbursement from the Government for the ambulance transport of dialysis patients from area medical facilities when such transport was not medically necessary. Koerner submits that the Court should not reach the "original source" inquiry because the allegations of present action are not "based upon" the prior lawsuits. In any event, Koerner submits that the Court has subject matter jurisdiction over the complaint of Michael Sampson, Sr. ("Sampson") and seeks leave of this Court allowing the addition of Sampson as a party plaintiff and/or to substitute Sampson in place of himself as relator in the instant proceedings.

3. Defendants assert that because the Court lacks subject matter jurisdiction over the *qui tam* complaint filed by Koerner as relator, Koerner cannot cure this jurisdictional defect by substituting Sampson as relator, citing *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447, 453 (5th Cir.1995). In addition, defendants submit that even if Sampson were substituted the Court would still lack jurisdiction pursuant to § 3730(e)(4)(A) of the *qui tam* statute because Sampson failed to disclose his alleged information to the government *prior to filing the lawsuit*, and only Koerner disclosed information to the Government prior to filing the instant complaint. Simply stated, defendants argue that to be an "original source", Sampson must have "voluntarily provided the information to the government before filing an action under this Section which is based on the information." *Id.*

4. See, Koerner's Complaint under 31 U.S.C. § 3730(b)(2), at para. 1. [Rec.Doc. No. 1].

*throughout the period thereafter until the present,* presented and/or caused to be presented false and/or fraudulent claims to the United States of America, made, used and/or caused to be made and/or used false records and statements to get false and/or fraudulent claims paid and approved by the Government, and conspired to defraud the United States of America by so causing false and/or fraudulent claims allowed and paid." [5]

In October of 1990, more than four years prior to the filing of the instant complaint and during which time frame Koerner specifically alleges the instant medicare/medicaid fraud scheme and/or conspiracy to defraud the government commenced, a company named Priority E.M.S. filed two different complaints against defendant Crescent City in Louisiana state court. In both state court suits, Priority E.M.S. alleged that Crescent City submitted fraudulent claims for reimbursement for ambulance services provided to individuals who were not medically eligible for those services.[6] These complaints were a matter of public record and, as such constitute public disclosures. Koerner, relator in the instant case, was counsel of record for Priority E.M.S. in both of the Louisiana state court lawsuits.

Then on November 12, 1991, Koerner filed a *qui tam* action on behalf of Federal Recovery Services, Inc. ("FRS") in this Court attempting to state a claim in the name of the United States of America against Crescent City E.M.S., Inc., Jerry Varanay and other defendants, alleging that beginning in 1989, Crescent City made false claims by seeking reimbursement for the costs of ambulance transport of patients to area hospitals, even though the patients were ambulatory and thus, ineligible under the Medicare and Medicaid regulations pertaining to ambulance services. See, *United States ex rel. Federal Recovery Services, Inc. v. Crescent City E.M.S., Inc., et al.,* (Civ. A. No. 91–4150) 1993 WL 345655 (E.D.La. decided August 30, 1993), *aff'd,* 72 F.3d 447 (5th Cir.1995).

In the *Federal Recovery Services (FRS)* litigation this Court determined that Michael Boatright, owner of a competing ambulance service, Priority E.M.S., Inc., discovered the information which formed the basis of the allegations of fraudulent claims for ambulance transport services against Crescent City and others. This Court found that Boatright alerted the United States and the news media of his allegations, and filed two state court lawsuits alleging unfair trade practices as well as several of the same allegations set forth in FRS's *qui tam* suit. In March of 1993, pursuant to 31 U.S.C. § 3730(b)(4) the government filed notice of its partial election to intervene in FRS's *qui tam* action.

FRS was a corporate entity created by Koerner along with co-counsel Michael Piper and their client, Michael Boatright, to serve as relator in the prior *qui tam* suit, so that the three could share in any proceeds resulting from the suit, if successful. *United States ex rel. Federal Recovery Services, Inc. v. Crescent City E.M.S., Inc., et al.,* 1993 WL 345655 (E.D.La. August 30, 1993). On June 2, 1993, Crescent City moved to dismiss FRS for lack of subject matter jurisdiction. Crescent City argued that FRS was not entitled to bring this action because the information underlying its complaint had been previously disclosed in prior Louisiana state court litigation and because FRS was not the original source of that information. In addition, Crescent City argued that Michael Boatright was not properly joined as a party plaintiff. FRS and Boatright attempted to cure this defect *via* motion to substitute Boatright in the place of FRS as relator.[7]

---

**5.** *Id.* at para. 15 (emphasis added).

**6.** *See, Priority E.M.S., Inc. v. Crescent City E.M.S. d/b/a Medic One and Medic One, Inc.,* No. 90–19542 (La.Civ.Dist.Ct.), *remedial writ denied,* 607 So.2d 559 (La.1992), *cert. denied,* 646 So.2d 380 (La.1994); *Priority E.M.S., Inc. v. Crescent City E.M.S., d/b/a Medic One, Inc. and Medic One,* No. 64–668 (Jud.Dist.Ct.), *remedial writ denied,* 600 So.2d 660 (La.1992).

**7.** The Court observes that in the case at bar, Koerner is attempting the same plaintiff/relator swapping maneuver that he, as counsel for FRS and Boatright, attempted in the earlier *Federal Recovery Services qui tam* litigation. Here too, Koerner recognizing that he is not the "original source" of the information upon which the allegations of the pending *qui tam* complaint are based, seeks to substitute Sampson in place of himself as relator. In the prior *qui tam* suit,

In the *FRS* case, this Court found that the substance of the allegations fraud in FRS's *qui tam* action was apparent from the face of the state court complaints, and thus, a matter of public record and sufficient to constitute "public disclosure" of the allegations. Comparing the allegations in Priority E.M.S.'s Orleans and St. Bernard Parish state court suits with FRS's allegations in its then pending *qui tam* suit, this Court found that a "substantial identity" existed between the proceedings. More to the point, the substance of the allegations in both state court suits (i.e., that Crescent City defrauded the government by charging Medicare for non-medically necessary ambulance transportation) was repeated in the FRS's *qui tam* action.

Finding that FRS's *qui tam* allegations were "based upon" publicly disclosed information, this Court considered whether the relator FRS was the "original source" of the information, and concluded it was not. Because FRS was not the original source of the information, this Court concluded FRS was without standing—it had no right to maintain the suit and thus, FRS was dismissed from the case. This Court then denied FRS's motion to substitute Boatright as relator and explained that: (1) his substitution was proscribed by 31 U.S.C. § 3730(b)(5); [8] and (2) because FRS was without standing it had no right to amend its petition to add Boatright.

On appeal, the Fifth Circuit affirmed this Court's judgment, holding that FRS's allega-

tions had been publicly disclosed in the earlier state court suits and that FRS was not an original source of the information. *Federal Recovery Services, Inc. v. United States,* 72 F.3d at 451–52. The Fifth Circuit echoed the opinions of the Tenth Circuit's decision in *United States ex rel. Precision Co. v. Koch Industries, Inc.,*[9] and the Eleventh Circuit in *Cooper v. Blue Cross and Blue Shield of Florida.*[10] 72 F.3d at 451. The *FRS* court specifically held that "FRS cannot avoid the jurisdictional bar simply by adding other claims that are substantively identical to those previously disclosed in the state court litigation." *Id.*

The Fifth Circuit in *Federal Recovery Services* also affirmed this Court's denial of FRS's attempt to add or substitute Boatright as the relator holding that the law of standing dictates the result and thus, FRS could not cure a defect in subject matter jurisdiction simply by adding or substituting Boatright as the relator.[11]

Koerner, who was previously an attorney for Boatright, FRS, and a shareholder of FRS, filed the instant *qui tam* action against Crescent City, Varanay, Medic One, and other defendants prior to the Fifth Circuit's decision in the *FRS* case. In the case at bar, Koerner names himself as relator and similarly alleges a Medicare fraud conspiracy involving fraudulent claims for unnecessary ambulance transport, which conspiracy began no later than 1990 involving Crescent City, Varanay and others.[12] Essentially, Koerner

Koerner sought the substitution of Boatright in the place of FRS as relator, recognizing that FRS could not qualify as the "original source" within the meaning of the False Claims Act.

**8.** Section 3730(b)(5) provides that when a person brings a *qui tam* action, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." *Id.* Essentially, the foregoing statutory language served to bar Boatright from intervening against the defendants in the pending *qui tam* litigation, as well as from refiling against the defendants once FRS was dismissed.

**9.** 971 F.2d 548, 552 (10th Cir.1992) (Koch I), *cert. denied,* 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993) (a *"qui tam* action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions.")

**10.** 19 F.3d 562, 567 (11th Cir.1994) (the statutory language of the False Claims Act precluding suits "based on" publicly disclosed information is most naturally read to preclude suits based in *any part* on publicly disclosed information.).

**11.** *Id.*

**12.** The Court here notes that it is clear from the submissions in this case, as well as the testimony elicited at the evidentiary hearing that any first-hand information disclosed by Sampson to Koerner was limited to the time period that he was employed by Medic One, that is, the period beginning in June of 1993. However, Koerner alleges that instant conspiracy commenced "no later than October 1, 1990." In this vein, Sampson acknowledged that before contacting Koerner regarding the alleged fraudulent medicare conspiracy involving the ambulance transport of non-dialysis patients which is the subject of this

repeats the substance of the allegations of the prior *qui tam* suit (i.e., that Crescent City and others defrauded the government by charging Medicare for non-medically necessary ambulance transportation) and simply adds a few specific allegations regarding false claims in connection with the transport of certain Charity Hospital patients and the existence of a Charity transport bribery scheme.[13]

The Court finds based upon the testimony of Sampson at the evidentiary hearing, that the additional information/allegations regarding the transport of certain Charity Hospital patients and the existence of a bribery scheme was gleaned from Michael Sampson, Sr. Koerner has also conceded that much stating in his Opposition to the Motion to Dismiss that: "Mr. Sampson, who is the real relator, is the original source of information about specific patients and the specific scheme at Charity Hospital."[14]

## II. ANALYSIS.

■ Section 3730(e)(4) limits the subject matter jurisdiction of courts adjudicating *qui tam* actions under the False Claims Act. It provides:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative, or Government Accounting Office report, hearing, audit or investigations, of from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

Following the statutory language, courts inquire as to: (1) whether there has been a "public disclosure" of allegations or transactions; (2) whether the qui tam action is "based upon" such publicly disclosed allegations; and (3) if so, whether the relator is the "original source" of the information. *Federal Recovery Services*, 72 F.3d at 450 (citing, *Cooper*, 19 F.3d 562, 565 n. 4 (11th Cir.1994)).

■ Koerner argues that the information which is the subject of his pending *qui tam* complaint has nothing to do with the fraudulent claims made in connection with the transport of dialysis patients which was the subject of the prior *Federal Recovery Services* litigation. Koerner asserts that his pending *qui tam* action rather involved a separate scheme to obtain transports of patients at Charity Hospital that did not meet Medicare and Medicaid criteria and a "Charity Transport Bribery Scheme".[15]

There is no room for doubt in this case, that the allegation of additional instances of fraud Koerner now seeks to interpose as relator in this case are at the very least based in part on information which was publicly disclosed. Koerner cannot with complete and utter candor deny that his knowledge of the defendants' alleged fraudulent medicare/medicaid scheme derives at the very least in part from his investigation and participation as counsel for and shareholder in plaintiff corporation FRS in the *Federal Recovery Services qui tam* litigation. Additionally, Koerner admits that he is not the "original source" of information regarding alleged "false claims" made by defendants in connection with the transport of Charity Hospital patients. The instant conspiracy alleged dates back to October 1, 1990, a period long before Sampson was ever employed by Medic One. As previously mentioned the Court notes that prior to contacting Koerner, Sampson admitted contacting Boatright and discussing his prior medicare fraud allegations.

case, he contacted Boatright and had some discussion with him regarding the allegations in the earlier litigation referred to herein above.

**13.** On March 25, 1996, the Government filed its notice of election to decline intervention in the case at bar.

**14.** Koerner's Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction, at p. 3.

**15.** See, Opposition to Motion to Dismiss, at pp. 2–3.

For purposes of 31 U.S.C. § 3730(e)(4)(A), a plaintiff's allegations are "based upon" a public disclosure when his allegations are substantially the same as the contents of that disclosure.[16] In *Federal Recovery Services*, the Fifth Circuit rejected FRS' argument because only one instance of fraud was common to both the state and federal litigation, that its *qui tam* action was not based upon the prior Louisiana state court litigation. The Fifth Circuit stated that it was not persuaded by FRS' argument, that its investigation unearthed additional instances of fraudulent conducted by Crescent City that were not a part of the earlier, state court litigation.

Here as in the prior *qui tam* litigation, Koerner cannot avoid the jurisdictional bar simply by adding claims that are substantively identical to those previously disclosed in the prior litigation involving medically unnecessary ambulance transports to area medical facilities. A comparison of Koerner's present allegations with those asserted *via* FRS in the prior *qui tam* action clearly demonstrates that Koerner's complaint is "based upon" that previously publicly disclosed information. Both complaints allege fraudulent medicare/medicaid reimbursement schemes by defendant Crescent City, E.M.S., *inter alia*, in connection with the transport of patients to and from area medical facilities and question medical necessity of such transport during time frames which overlap considerably.[17] Thus, even though Koerner has added new allegations on the basis of his own investigation and information later gleaned from Sampson, his claim is still "based upon" publicly disclosed allegations.

Considering the foregoing, this Court is without subject matter jurisdiction over Koerner's pending *qui tam* suit unless the Court finds that Koerner is the "original source" of the information upon which the allegations are based. The False Claims Act defines "original source" as

> an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B).

Koerner's status in this litigation differs from FRS's status in the prior *qui tam* litigation in no meaningful way. Koerner admits that his participation in this litigation is solely as nominal plaintiff-relator. Koerner's complaint on its face shows that he does not have independent knowledge of the information upon which his allegations are based, but rather, an individual named Michael Sampson, Sr. ("Sampson") provided the information upon which his allegations of fraud are based. Koerner has also submitted a motion to this Court seeking an order substituting Sampson as the real party in interest, and to amend the caption to reflect Sampson's capacity as the real relator. Additionally, in his opposition to the defendants' Motion to Dismiss, at Section V, in bold capitalized print, Koerner states **"SAMPSON WAS THE ORIGINAL SOURCE OF THIS INFORMATION".**[18]

Moreover, Sampson testified at the evidentiary hearing that he did not provide the information to the Government before filing the instant action. On cross-examination counsel for the defendants asked Sampson: "Did you give to the United States any documents in support of your claims in this lawsuit?" Sampson responded: "No." Samp-

---

**16.** See, *United States ex rel. Cooper v. Blue Cross & Blue Shield*, 19 F.3d 562, 567 (11th Cir.1994); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553–54 (10th Cir.1992); and *Federal Recovery Services*, 72 F.3d at 451 (holding a plaintiff's claim is "based upon" publicly disclosed information if his allegations are "even partly based upon" the publicly disclosed information).

**17.** The Court here notes that factual predicate of Koerner's present *qui tam* action in large part pre-dates the September 23, 1994 dismissal of the prior *Federal Recovery Services*. More specifically, the time frame covered by Koerner's allegations in his present *qui tam action* (i.e., October 1990 to the present), overlaps the time frame covered by FRS's allegations in the prior *qui tam* action (i.e., January 1989 to September 1994), significantly and by a period of years.

**18.** See, Koerner's Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction, at p. 12.

son further admitted he was not notified that the suit had been filed by Koerner and was never apprised by his counsel that a *qui tam* suit had been filed solely in Koerner's name relating the information he [Sampson] provided to Koerner.

■ It is clear from Koerner's complaint, other documents of the record, and the testimony adduced at the evidentiary hearing that Koerner is not the "original source" of the information underlying the instant *qui tam* action. Koerner lacks direct and independent knowledge of the information.[19]

This Court previously found a substantive identity between the allegations in the captioned matter and those publicly disclosed in the prior *Federal Recovery Services* litigation. As to additional specific instances of medicare/medicaid fraud alleged in Koerner's present suit which were not specifically alleged in the prior *qui tam* litigation, Koerner admittedly obtained such information from an intermediary source, Michael Sampson, Sr. Merely a recipient of information and not a direct source, Koerner has no standing under the Act. Koerner's pending *qui tam* action falls squarely within the jurisdictional bar and must be dismissed for lack of subject matter jurisdiction.

■ Here as in the *Federal Recovery Services* litigation, Koerner argues that even if he cannot pursue this litigation, the real party in interest, in this case Michael Sampson, Sr., can.[20] In the previous *Federal Recovery Services qui tam* suit instituted by Koerner, the Fifth Circuit affirmed this Court's order denying FRS's attempt to amend its complaint to name Boatright as additional plaintiff and/or to substitute Boatright as the relator. *Federal Recovery Services*, 72 F.3d at 452–53. The Fifth Circuit explained:

> 31 U.S.C. 3730(e)(4) denies subject matter jurisdiction over the qui tam complaint filed by FRS. Under precedent controlling the panel, neither Rule 15 nor any other rule of civil procedure permits FRS to cure this jurisdictional defect by including or substituting Boatright.

*Id.* at 453. The aforestated rule of the Fifth Circuit set forth in *Federal Recovery Services, supra*, governs the disposition of Koerner's Motion to Add/Substitute Sampson as relator in the case at bar, and thus, it is denied.

This Court's determination is in keeping with the purpose of the False Claims Act, which aims at ferreting out fraud by encouraging persons with first-hand knowledge of alleged wrongdoing to come forward. It is the cooperation of individuals who are either *close observers* or *otherwise involved in the fraudulent activity* that Congress sought to enlist through the *qui tam* provisions of the Act. Koerner was neither a close observer of or otherwise involved in the fraudulent activity which is the subject his complaint. The original source requirements of § 3730(e)(4) are intended to bar parasitic

---

19. "Direct" knowledge under the False Claims Act has been defined as knowledge "marked by absence of an intervening agency," *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 656 (D.C.Cir.1994), or "unmediated by anything but [the plaintiff's] own labor." *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir.1992). A relator is said to have direct knowledge when he "saw [it] with his own eyes." *Id.* The direct knowledge requirement was intended to avoid parasitic lawsuits by disinterested outsiders. In *United States ex rel. Barth v. Ridgedale Electric, Inc.*, 44 F.3d 699, 703 (8th Cir.1995), the Eighth Circuit neatly summed up the purpose of the Act as follows:

> [T]he Act seeks to encourage persons "with *first-hand* knowledge of fraudulent misconduct," or those "who are either *close observers* or *otherwise involved* in the fraudulent activity" to come forward. . . .

> [A] person who·obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source under the Act. Accordingly, "collateral research and investigations . . . [do] not establish 'direct and independent knowledge of the information on which the allegations are based within the meaning of § 3730(e)(4)(B).' "

*Id.* (citations omitted).

20. See, Koerner's Motion to File and Process Additional Copy of Ex Parte Motion to Add Michael Sampson, Sr. as Additional Party Plaintiff, to Designate Michael Sampson, Sr. as the Real Party in Interest, and to Amend the Caption to Reflect that Mr. Sampson's Capacity as Relator in place of Motion Lost or Misplaced by the Clerk's Office (attached hereto and filed herewith).

suits, such as the one presently before this Court, where the plaintiff seeks a reward even though he has contributed nothing significant to the exposure of the alleged fraud.[21]

The Court has reviewed the documents proffered *in globo* by Koerner at the time of the evidentiary hearing (i.e., Koerner Proffer No. 1), as well the documents attached to Koerner's post-hearing Ex Parte Motion to File and Introduce Exhibits. Not one of those documents gives this Court reason to question its ruling that it lacks subject matter jurisdiction in this case.

For all of the above and foregoing reasons,

IT IS ORDERED that defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby GRANTED.

IT IS FURTHER ORDERED that Koerner's *Ex Parte* Motion to File and Process *Ex Parte* Motion to Add Michael Sampson, Sr. as additional Party Plaintiff, and to Designate Michael Sampson, Sr. as the Real Party in Interest, and to Amend the Caption, is hereby DENIED.

IT IS FURTHER ORDERED that Koerner's post-hearing *Ex Parte* Motion to File and Introduce Exhibits into Evidence is DENIED.[22]

The Clerk of Court is hereby directed to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

---

21. It is noteworthy, that Sampson testified at the evidentiary hearing that at the outset he gave Koerner authority to file a *qui tam* suit based upon the information he [Sampson] disclosed. For reasons Koerner has stated in the record, the logic of which this Court fails to grasp, Koerner filed the instant *qui tam* complaint naming himself as relator, with full knowledge that he was not the "original source" of the information within the meaning of the Act.

22. The Court notes that Sampson's September 12, 1994 letter to Boatright submitted along with his Motion to Introduce and File Exhibits was previously accepted by the Court as a part of Koerner's Proffer No. 1 *in globo*.