**Herbert COOPER, Plaintiff–Appellant,**

**United States of America, ex rel, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., Defendant–Appellee.**

No. 92–4875.

United States Court of Appeals, Eleventh Circuit.

April 21, 1994.

former Fifth Circuit handed down prior to October 1, 1981.

**564**

Tracy E. Tomlin, George, Hartz, Lundeen, Flagg & Fulmer, Coral Gables, FL, for plaintiff-appellant.

S. William Livingston, Jr. and Carolyn F. Corwin, Covington & Burling, Washington, DC, for defendant-appellee.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

This appeal involves the jurisdictional bar of the False Claims Act (FCA), 31 U.S.C. § 3730(e)(4) (1986). The district court found appellant James Cooper's (Cooper) *qui tam* suit barred under this provision. We vacate the dismissal and remand for further proceedings.

The appeal presents three main questions. First, when general allegations of widespread fraud in an industry are publically disclosed, does the jurisdictional bar of the False Claims Act preclude a *qui tam* plaintiff from bringing suit for the same kind of fraud against a defendant who has not been specifically identified in the public disclosures? Second, if Cooper based this action on information publically disclosed, does he qualify as an "original source"? Third, did Cooper meet the pleading requirements of Fed. R.Civ.P. 9(b)?

*I. Facts and Procedural History*

In 1988, Cooper was over the age of 65 but still employed with the United States Census Bureau. As a "working aged", he qualified for both Medicare and the Federal Employees Health Benefits Program, which was administered by Blue Cross Blue Shield of Florida (BCBSF). In early 1988, Cooper and his wife began submitting medical bills to BCBSF for payment. Over the next two years, almost every time the Coopers submitted a claim, BCBSF either returned the claim with instructions that "Medicare must pay first" or paid a secondary amount after deducting what it said Medicare would be required to pay first. As a result, Medicare and BCBSF shuffled his claims back and forth before Cooper or his physicians were paid.

Confused, Cooper began researching his benefits and the law governing payment of the his claims. He also contacted members of Congress and the Health Care Financing Administration (HCFA) and expressed his frustration. Cooper learned that, because he was a "working aged", Medicare Secondary Payer (MSP) laws required BCBSF, as his primary insurer, to pay on his claims before sending the balance to Medicare, his "secondary" insurer.[1] He repeatedly informed BCBSF of his status as a "working aged" and of this rule. Still, BCBSF sent claims back to him, stating that Medicare must pay first. Medicare paid these claims, unaware that Cooper had primary insurance. In 1990 Cooper again contacted HCFA about his problems with BCBSF, including in his letter an article from the Miami Herald indicating this conduct was occurring at other insurance companies. He asked HCFA to act.

On August 17, 1990 Cooper instituted this *qui tam* action under the FCA alleging BCBSF committed fraud against the government by submitting his claims to Medicare when BCBSF knew it was required to pay

---

1. Congress shifted primary liability to private commercial carriers through the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, § 116(b), 96 Stat. 324, 353 (1982). By submitting the claims to Medicare or sending them to Cooper to submit to Medicare first, BCBSF seemingly avoided or decreased its payments and forced Medicare to overpay.

primary. BCBSF filed a motion to dismiss for lack of subject matter jurisdiction, claiming Cooper based his actions on publically disclosed information and that he was not an original source of the information disclosed. BCBSF also said Cooper had pleaded fraud with insufficient particularity under Fed. R.Civ.P. 9(b). The district court dismissed the complaint.

## II. The False Claims Act

The history of the False Claims Act and its 1986 amendments has been described by this and other courts. *See, e.g., United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493 (11th Cir.1991); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149 (3d Cir. 1991) (hereinafter *Prudential* ). The 1986 amendments were intended to increase private citizen involvement in exposing fraud against the government while preventing opportunistic suits by private persons who heard of fraud but played no part in exposing it.[2] *Williams*, 931 F.2d at 1493; *False Claims Act Implementation: Hearing Before the Subcomm. on Admin. Law and Gov. Relations of the House Comm. on the Judiciary*, 101st Cong., 2d Sess. 3 (1990) [hereinafter *1990 Implementation Hearing* ] (1986 amendment "sought to resolve the tension between ... encouraging people to come forward with information and ... preventing parasitic lawsuits") (statement of co-sponsor Sen. Grassley).[3] Questions presented under

the Act must be considered with these goals in mind.

Section 3730(e)(4) of the Act provides for a jurisdictional bar in certain circumstances. It says:

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).[4] A court reaches the original source question only if it finds the plaintiff's suit is based on information publically disclosed. *Williams*, 931 F.2d at 1500.

BCBSF argues that the allegations upon which Cooper's action is based were publically disclosed before Cooper filed suit. BCBSF also claims Cooper is no original source of the information disclosed and so the suit must be barred.[5] To address these

---

**2.** The Act was first passed in 1863. It specifically provided for *qui tam* actions to encourage private citizens or "relators" to come forward and expose fraud against the government. In 1943, amendments severely restricted the number of potential *qui tam* actions. Recognizing the need to increase government and private efforts to stop fraud, Congress liberalized some of the Act's provisions in 1986.

**3.** We are reluctant to consider legislative history because "debates in Congress are not appropriate or even reliable guides to the meaning of the language of an enactment." *See United States v. St. Paul M. & M. R.R. Co., et al.*, 247 U.S. 310, 318, 38 S.Ct. 525, 528, 62 L.Ed. 1130 (1918). But statements by committee chairmen in charge of a bill or the sponsor or author of legislation are entitled to some weight. *Id.; see also, S. & E. Contractors, Inc. v. United States*, 406 U.S. 1, 12–15 n. 9, 92 S.Ct. 1411, 1418–19 n. 9, 31 L.Ed.2d 658 (1972).

**4.** A three part inquiry determines if jurisdiction exists: (1) have the allegations made by the plaintiff been publically disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an "original source" of that information. *See, e.g., Williams*, 931 F.2d at 1500, n. 12. The Second Circuit has interpreted the original source exception more narrowly, finding that, to qualify as an original source, the relator must prove he revealed the information *to the entity* that publically disclosed it. *See United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16–17 (2d Cir.1990).

**5.** BCBSF cites five public disclosures: (1) a 1987 GAO report on MSP laws in which BCBSF was mentioned; (2) a 1988 GAO report in which BCBSF was not specifically mentioned but widespread MSP fraud by the insurance industry was discussed; (3) newspaper articles in which other insurance companies that had engaged in similar

claims, we look first to the plain language of the Act's jurisdictional provision. *See Consumer Prod. Safety Com. v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Williams,* 931 F.2d at 1498. If that language is ambiguous, we may turn to legislative history to determine Congress's intent. *Williams,* 931 F.2d at 1498.

Because we consider it to be crucial whether BCBSF was mentioned by name or otherwise specifically identified in public disclosures, we consider separately those sources in which it was identified and those in which it was not.[6]

*A. Disclosures in which BCBSF was not named*

■ The allegations of widespread MSP fraud made in sources in which BCBSF was not specifically named or otherwise directly identified are insufficient to trigger the jurisdictional bar. The 1988 GAO report discusses widespread MSP fraud and names other insurance companies, but it never mentions BCBSF. In a similar way, the specific allegations of MSP fraud against other insurance companies in OIG reports, newspaper articles, and a prior similar action against Blue Cross Blue Shield of Georgia do not preclude Cooper's action.

This result seems consistent with the purposes of the FCA and the 1986 amendments. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Provident Life & Acci. Ins. Co.,* 721 F.Supp. 1247, 1258 (S.D.Fla.1989) (hereinafter *Provident*) (*qui tam* suit not barred when neither defendant's name nor its alleged fraudulent conduct was disclosed in government reports); *1990 Implementation Hearing,* at 6 ("The publication

of general, non-specific information does not necessarily lead to the discovery of specific, individual fraud which is the target of the *qui tam* action") (Statement of Sen. Grassley).

Requiring that allegations specific to a particular defendant be publically disclosed before finding the action potentially barred encourages private citizen involvement and increases the chances that every instance of specific fraud will be revealed. To hold otherwise would preclude any *qui tam* suit once widespread—but not universal—fraud in an industry was revealed. The government often knows on a general level that fraud is taking place and that it, and the taxpayers, are losing money. But it has difficulty identifying all of the individual actors engaged in the fraudulent activity. *See United States ex rel. LaValley v. First Nat'l Bank,* 707 F.Supp. 1351, 1355 (D.Mass.1988) (noting 1986 amendments passed because fraud against government so rampant and difficult to identify government needed all help it could get from private citizens). This casting of a net to catch all wrongdoers is precisely where the government needs the help of its "private attorneys general". *See 1990 Implementation Hearing,* at 4 (Statement of Sen. Charles Grassley). BCBSF's approach, on the other hand, would hamper the discovery of specific instances of fraud and the recovery of losses.[7]

This decision will not, as BCBSF claims, "open the floodgates" by enabling, for example, every insured to sue his insurance company when he hears that many insurance companies are committing fraud. Speculative suits against innocent actors for fraud

---

activities were implicated; (4) a complaint based on the same conduct filed in a prior *qui tam* action against Blue Cross Blue Shield of Georgia; and (5) a series of 1990 Office of Inspector General (OIG) documents naming certain companies and indicating investigations were ongoing.

**6.** For purposes of our inquiry, we accept that all sources identified by BCBSF are methods of public disclosure within the meaning of section 3730(e)(4)(A). *See, e.g., Williams,* 931 F.2d at 1499 (methods of public disclosure set forth in section are only types that would defeat jurisdiction); *United States ex rel. Precision Co. v. Koch Industries,* 971 F.2d 548 (10th Cir.) *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993) (allegations made in prior complaint publically disclosed barred *qui tam* action under FCA).

**7.** As an example, suppose it was widely believed that there is bid-rigging in the defense industry. Under BCBSF's approach, any disclosure—in a suit against a contractor or a media account of "industry-wide" corruption for instance—could bar a suit by a *qui tam* plaintiff against *any* member of the defense industry. This result is at odds with the purpose of the 1986 amendments. If this is what Congress intended, it can amend the Act further to make this clear.

are generally not favored by the law. For example, the plaintiff must plead fraud with particularity under Fed.R.Civ.P. 9(b). This pleading must include facts as to time, place, and substance of the defendant's alleged fraud *Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988). This requirement makes it hard for many persons to bring a *qui tam* suit and guards against "guilt by association".

The False Claims Act has other safeguards against multiplicity of suits. Once allegations against a specific defendant have been made in any forum or by any means listed in section 3730(e)(4)(A), the information *about that defendant* has been publically disclosed. So, a suit would be barred unless the private *qui tam* plaintiff had "direct and independent" knowledge, that is, is an "original source", of the allegations under section 3730(e)(4)(B). And, once one suit has been filed by a relator or by the government, all other suits against the same defendant based on the same kind of conduct would be barred. *See Id.* § 3730(b)(5).[8]

*B. Disclosures in which BCBSF was specifically mentioned*

BCBSF identifies two public disclosures in which BCBSF is mentioned by name. We consider only the second a public disclosure under section 3730(e)(4)(A), but we also conclude Cooper is an "original source" under the FCA.

■ The first disclosure is a 1987 GAO report on intermediaries and MSP laws. This report does name BCBSF, but only in the context of its role as an intermediary responsible for monitoring payment to hospitals under the MSP laws. The report criticizes BCBSF's plan for monitoring payments to hospitals under the MSP laws and notes a potential conflict of interest when BCBSF is also a primary insurer for the working aged.

But the report does not allege that BCBSF in its capacity as a primary insurer actually engaged in wrongdoing. This report does not constitute a "public disclosure of allegations or transactions" that BCBSF knowingly violated MSP laws.

■ BCBSF was also mentioned (as a primary insurer) in a House subcommittee hearing on industry-wide MSP fraud. Cooper's counsel was present at the hearing which took place in July 1990, five weeks before Cooper's action was filed.[9] This hearing was a public disclosure of allegations. So, we must consider whether Cooper's suit was based on the information disclosed. We conclude that it was.

■ Cooper claims he had evidence of BCBSF's wrongdoing, through his own dealings with BCBSF and his independent research, before it was disclosed at the hearing that BCBSF was under investigation. So, he argues his suit is not based on the hearing testimony and is, therefore, not barred. But, as the Tenth Circuit recently recognized, the general definition of "based on" is "supported by". *United States ex rel. Precision Co. v. Koch Industries*, 971 F.2d 548, 552 (10th Cir.1992), *cert. denied.*, —— U.S. ——, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993). Short of inserting the word "solely" which would expand our jurisdiction, the language is most naturally read to preclude suits based in *any part* on publically disclosed information. *See id.; see also United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993) (following *Precision* ).

Although the record shows Cooper gathered much evidence on his own and had contacted congressional, OIG and HCFA representatives early on, he filed his suit

---

8. When a private *qui tam* plaintiff files suit, he must serve a copy of the complaint and all material information on the government. The complaint is filed in camera and remains under seal for at least sixty days. It may not be served on the defendant until the court orders service. *See* 31 U.S.C. § 3730(b). Within sixty days from the receipt of service and material information, the government can take over the action, or it can notify the court that it declines to proceed, in

which case the private plaintiff conducts the case. *See* 31 U.S.C. § 3730(b)(2) & (b)(4).

9. The record indicates an OIG witness testified at the hearing that OIG had begun an investigation of five insurance companies, including BCBSF, that may have violated the laws. The witness also stated the OIG's investigation into BCBSF was at HCFA's request.

some five weeks after it was disclosed at the hearing that BCBSF was under investigation for MSP fraud. So, his suit may have been at least partially based upon this revelation. Thus, we will determine whether Cooper was an "original source" within the meaning of the Act.[10] We conclude he was.

### C. Cooper was an Original Source

The record shows Cooper acquired his knowledge of BCBSF's alleged wrongdoing through three years of his own claims processing, research, and correspondence with members of Congress and HCFA.[11] Three weeks before the hearing in which an OIG inspector announced it was investigating BCBSF at HCFA's request, Cooper had asked HCFA to act against BCBSF. Thus, his knowledge was direct. And it was obtained independently of the allegations disclosed at the hearing.[12] That he filed suit shortly after the hearing does not change this circumstance. See Prudential, 944 F.2d at 1160 (it is not necessary for relator to have all relevant information to qualify as "inde-

pendent"); see also 1990 Implementation Hearing, at 3 (Because of original source exception, "a party with knowledge of fraud against government should be able to maintain a qui tam action as long as he had some of the information in advance of the public disclosure.") (Statement of Sen. Grassley). Cooper qualifies as an original source under section 3730(e)(4)(B).[13] The district court erred in finding the suit was barred.

### III. Pleading Fraud With Specificity

Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. The plaintiff's complaint must allege the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them. Durham v. Business Management Assocs., 847 F.2d 1505 (11th Cir.1988). BCBSF argued successfully below that Cooper's complaint did not satisfy Rule 9(b). We agree. Cooper made general conclusory allegations of fraud. But as BCBSF concedes, Cooper is entitled to one chance to amend the complaint and bring it

10. Some courts have given more weight to the "based upon" element of the qui tam inquiry. See LaValley, 707 F.Supp. at 1351 (relying on some evidence obtained in independent investigation satisfies "based upon" test). But, as the Precision court noted, the original source inquiry was to be the focus of the Act's jurisdictional provisions. Precision, 971 F.2d at 552; See also, 1990 Implementation Hearing, at 5 (referring to Congress's goal of reconciling tension between encouraging citizen involvement and preventing parasitical suits and noting "the resolution of this question rests on how the law's 'original source' doctrine will be interpreted") (Statement of Sen. Grassley). The Tenth Circuit concluded the "based upon" test was to be a "quick trigger to get to the more exacting original source inquiry". Precision, 971 F.2d at 552. We agree. "The 'original source' exception was intended to ensure that qui tam actions based solely on public disclosures could not be brought by individuals that had no direct or independent knowledge of the information, or those who were not an original source to the entity that disclosed the fraud." (emphasis added). 1990 Implementation Hearing, at 5.

11. Cooper asked for a copy of TEFRA legislation from his Representative. He also wrote officials at HCFA and BCBSF asking for explanations and advice.

12. BCBSF argues Cooper's knowledge is not "substantive" information that "seriously contributes to the disclosure of fraud". See United

States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 321 (2d Cir.1992). We disagree. The purpose of the FCA was to enlist the public's help in uncovering specifically each and every perpetrator of fraud. Cooper's information is potentially specific, direct evidence of fraudulent activity by BCBSF. And Cooper would have learned of BCBSF's acts absent public disclosure. See United States ex rel. Houck v. Folding Carton Admin. Committee., 881 F.2d 494, 505 (7th Cir. 1989). Cooper's information is more than background information which enables him to understand the significance of a more general public disclosure. Prudential, 944 F.2d at 1160. It is "direct" and "independent" within the meaning of the FCA.

13. We are unable to agree with the Second Circuit's opinion that the relator must also prove he was the original source of the information to the entity that disclosed it. See Dick, 912 F.2d at 16–17. This rule does not appear in the plain language of the statute, and we find no support for it in the legislative history. Relators under the FCA are required to bring their allegations to the government's attention before filing suit. If allegations are later disclosed by another office of the government, it may be difficult to trace the original allegations through government bureaucracy back to the relator. This requirement would impose a tough burden on the relator and could discourage citizen involvement, even when the citizen has direct and independent knowledge of fraud.

into compliance with the rule. *See Bank v. Pitt*, 928 F.2d 1108 (11th Cir.1991). Thus, we instruct the district court to allow Cooper to amend his complaint.[14]

VACATED AND REMANDED.

---

14. BCBSF finally argues its handling of Cooper's claims amounted at best to mistake or negligence. This question is for trial, and we need not address it now.