**U.S. ex rel. Chester SALDIVAR, Plaintiff,**

v.

**FRESENIUS MEDICAL CARE HOLDINGS, INC., Defendant.**

**Civil Action No. 1:10–CV–01614–AT.**

United States District Court, N.D. Georgia, Atlanta Division.

March 26, 2012.

Jamie M. Bennett, Melissa A. Roover, Nathan M. Peak, Sidney Schupak, Ashcraft & Gerel, LLP; Andrea Solomon Hirsch, Herman Gerel, LLP, for Plaintiff.

James F. Bennett, Lisa S. Hoopenjans, Megan Heinsz, Dowd Bennett; Joseph Matthew Maguire, Jr., Parks Chesin & Walbert, P.C., for Defendant.

Neeli Ben–David, Mina Rhee, U.S. Attorney's Office, for United States.

## ORDER

AMY TOTENBERG, District Judge.

This matter is before the Court on Defendant Fresenius Medical Care Holdings, Inc.'s ("Fresenius") motion to dismiss Relator Chester Saldivar's Amended Complaint. [Doc. 42.] Relator has alleged that Defendant has engaged in a fraudulent billing scheme involving medications it received for free from manufacturers and administered to dialysis patients but sought reimbursement from various governmental agencies in violation of the False Claims Act and numerous state-law equivalents. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Fresenius' motion to dismiss Relator's Amended Complaint.

## I. STANDARD FOR MOTION TO DISMISS

Although Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), courts have generally observed that the public disclosure bar is jurisdictional and, therefore, more properly addressed under Federal Rule of Civil Procedure 12(b)(1). *See, e.g., Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 467–68, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (holding that § 3730(e)(4) of the False Claims Act is jurisdictional); *Battle v. Bd. of Regents*, 468 F.3d 755, 762 (11th Cir.2006). Defendant's motion to dismiss asserts that Relator's allegations have been publicly disclosed, "such that the Court lacks jurisdiction." (Defs.' Mot. Dismiss ¶ 4.) Defendant's memorandum in support of its motion to dismiss also states explicitly that "[t]he public disclosure bar is jurisdictional." (Defs.' Mem. Supp. Mot. Dismiss at 2.)

██ The Eleventh Circuit has recognized that a motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir.2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). In this sense, a facial challenge equips a plaintiff with safeguards similar to those afforded by a Rule 12(b)(6) motion for failure to state a claim and limits the court to a comparable scope of review. *See id.*

██ A factual attack, on the other hand, "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Accordingly, when addressing a factual attack, the Court may consider matters outside the pleadings, such as testimony and affidavits. *Id.* To compensate for this broader scope of review, the former Fifth Circuit established that in a factual challenge, the Court must give the plaintiff an opportunity for discovery and for an appropriate hearing. *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.1981), *as recognized in McElmurray*, 501 F.3d at 1251.

██ If the Court were to construe Defendant's challenge on the basis of § 3730(e)(4) of the False Claims Act as a factual attack on this Court's subject matter jurisdiction, it would, in essence, convert Defendant's motion into one comparable to summary judgment. Even under the motion-to-dismiss standard, the Court's consideration of documents extrinsic to the pleadings converts a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. The Court will not convert Defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment *sua sponte*.[1] Accord-

---

1. Eleventh Circuit precedent also counsels that dismissal of Relator's Amended Complaint pursuant to a factual attack warrants further hesitation. Because a factual attack on subject matter jurisdiction may implicate the merits of a case, the Eleventh Circuit has cautioned courts against premature review of factual issues at this stage. *See Lawrence*, 919 F.2d at 1530–31 ("[U]nder the law of this circuit ..., federal claims should not be dis-

missed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact."); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733–34 (11th Cir.1982) ("Where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.")

ingly, and because Defendant's motion was argued pursuant to Rule 12(b)(6), the Court reads Defendant's motion to dismiss as a facial challenge.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937,1949, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

## II. BACKGROUND

Relator is a resident of California, formerly employed by Defendant Fresenius from March 31, 2007, until December 18, 2009. (Compl. ¶ 10.) Fresenius is headquartered in Massachusetts and is the country's largest dialysis services provider. (Id. at ¶¶ 2, 11.) As such, Fresenius is entitled to reimbursement from federal and state health care programs (e.g., Medicare and Medicaid) for costs associated with covered patient treatment. (Id. at ¶ 2.) In addition to composite payments for its routine dialysis treatment regime, Fresenius is entitled to separate reimbursement for certain injectable medications that it purchases and administers to dialysis patients. (Id. at ¶ 22.) At issue in this case are Fresenius' billing practices for two such medications: Zemplar (a Vitamin D analog) and Epogen (a hormone used to lessen the effects of anemia). (Id. at ¶¶ 3, 18–19.) Relator contends that during and by virtue of his employment with Fresenius, he learned that Fresenius bills the government for doses of Zemplar and Epogen that it received for free, resulting in Fresenius submitting an estimated "hundreds of millions of dollars" in fraudulent reimbursement claims. (Id. at ¶¶ 4, 47, 87.)

Consistent with industry standards, manufacturers of Zemplar and Epogen include in each vial a surplus volume of each drug, referred to as "overfill." (Id. at ¶ 37.) For example, a 5–unit vial of Zemplar may, in fact, contain 6 units of the drug. Relator contends that dialysis-care providers have two legitimate options with respect to overfill volumes: (1) discard the excess drug in situations where the Centers for Medicare and Medicare Services prohibit re-entry into a vial, or (2) administer the drug, where permitted, and reduce the amount sought for reimbursement to reflect only actual costs incurred. (Id.) Relator alleges that Fresenius unlawfully collected, tracked, administered, and billed the government for overfill volumes of both Zemplar and Epogen. (Id. at ¶ 47.) In short, Relator contends that, rather

(internal quotation marks and citation omitted); U.S. ex rel. Sanders v. East Alabama Healthcare Auth., 953 F.Supp. 1404, 1409 (M.D.Ala.1996) (declining to dismiss a qui tam action because the False Claims Act's jurisdictional bars were too closely related to the merits).

than discard overfill, Fresenius fraudulently billed the government for administrations of Zemplar and Epogen that it received for free. (*Id.* at ¶ 4, 47.)

Relator bases these allegations on information learned during his employment with Fresenius. (*Id.* at ¶ 47.) When Relator began working with Fresenius in March of 2007, he was employed as an Equipment Technician at Fresenius' Los Angeles South/Nevada Region clinics. (*Id.* at ¶ 50.) In January of 2008, Fresenius expanded Relator's job requirements to include primary responsibility for the clinics' Zemplar inventory. (*Id.* at ¶ 64.) Relator alleges that while creating monthly Zemplar reports, he observed that Zemplar overfill accounted for up to 30% of the total doses that Fresenius administered at clinics. (*Id.* at ¶ 65.)

During that time, Relator contends that Fresenius' corporate headquarters regularly sent monthly and quarterly reports to clinic supervisors "reminding [them] of the company's overfill percentage goals, and listing clinic performance nationwide in terms of overfill percentage for Epogen and Zemplar administered to patients." (*Id.* at ¶ 51.) In addition to formal recognition by corporate headquarters, overfill requirements were regularly the subject of conversations between Relator and Fresenius clinical managers. (*Id.* at ¶ 53.)

In September of 2009, Fresenius expanded Relator's job to include Epogen inventory work. (*Id.*) In this position, a Fresenius clinic manager told Relator that the need to keep overfill percentages for Epogen would be high, as it had been for Zemplar. (*Id.*) At that time, both Zemplar and Epogen inventory forms tracked total administered doses (both with and without overfill use) and highlighted the overfill percentage of administered doses. (*Id.* at ¶ 55.) By virtue of his inventory-based work, Relator noted that the total administered doses at a given clinic never equaled the total available drug amount from the clinic inventory, suggesting the inclusion of overfill in Fresenius' reporting of administered doses. (*Id.* at ¶ 56.) Because Fresenius' reimbursement bills did not compare total administered doses with the total number of vials purchased, Relator contends that the government remained unaware of this discrepancy. (*Id.* at ¶ 57.) For example, Relator alleges that in October of 2008, Fresenius billed Medicare for a total of 762,000 units, even though it incurred acquisition costs for only 680,000 of those units. (*Id.* at ¶ 77.)

Relator also identified discrepancies between the number of Epogen vials reported and the number of Epogen vials he observed in inventory counts. (*Id.* at ¶ 59.) Because he was required to sign and personally attest to the accuracy of the Epogen inventory count, Relator contends he was concerned about the provision of false information. (*Id.*) Accordingly, Relator expressed his concerns to Fresenius' management, who subsequently suspended him for an "investigatory period" beginning in March of 2009. (*Id.* at ¶ 60.) Relator alleges Fresenius ultimately terminated him without explanation in December of 2009. (*Id.*)

Relator sued Defendant in this Court on January 24, 2011, alleging several claims: Count 1 for violating the False Claims Act by submitting false or fraudulent claims with respect to Zemplar overfill reimbursement and making false records or statements material to such claims; Count 2 for violating the False Claims Act by concealing or improperly avoiding or decreasing its own obligation to reimburse the Government for Zemplar overfill reimbursement; Count 3 for violating the False Claims Act by submitting false or fraudulent claims with respect to Epogen overfill reimbursement and making false records or statements material to such claims; Count 4 for violating the False Claims Act

by concealing or improperly avoiding or decreasing its own obligation to reimburse the government for Epogen overfill reimbursement; and Counts 5–22 for violating various state-law equivalents of the False Claims Act.

Defendant filed a motion to dismiss the complaint on July 6, 2011, that contended (1) the False Claims Act's "public disclosure" bar precludes Relator from bringing these claims, and (2) Relator is not the "original source" of these allegations as required under the False Claims Act. (Defs.' Mot. Dismiss ¶ 4.) The Court notes additional facts below as needed, keeping in mind the motion to dismiss standard.

## III. IMPROPER SUBMISSIONS

■ In support of its motion, Defendant has submitted numerous documents to the Court that are improper at this stage. Federal Rule of Civil Procedure 10(c) provides that written instruments attached to a pleading are part of the pleading. The Eleventh Circuit has somewhat expanded the range of documents courts can consider without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Courts may consider evidence extrinsic to the pleadings on a Rule 12(b)(6) motion to dismiss if (1) the documents are referred to in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the evidence's authenticity is not in question. *See SFM Holdings, Ltd. v. Banc of America Sec., L.L.C.*, 600 F.3d 1334, 1337 (11th Cir.2010) (observing that extrinsic document's authenticity must not be in dispute for con-

sideration at Rule 12(b)(6) stage); *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1368–69 (11th Cir.1997) (recognizing that the purpose of Rule 12(b)(6) is to test the facial sufficiency of a claim for relief, not to make a determination on the merits).

■ A court may also take judicial notice of publicly filed documents at the motion to dismiss stage without converting a Rule 12(b)(6) motion to a Rule 56 motion. *See Halmos v. Bomardier Aerospace Corp.*, 404 Fed.Appx. 376, 377 (11th Cir. 2010) (holding that the permissible scope of a 12(b)(6) motion to dismiss encompasses "the complaint, attachments to the complaint, and matters of public record"). Relator makes no mention of the alleged "public disclosures" in his Amended Complaint and does not attach any documents suggesting such public disclosures. However, several documents offered in support of Defendant's motion to dismiss reside in the public domain: Exhibits 3 and 9 (the *Zwick* and *Woodard* complaints), Exhibit 10 (the U.S. Attorney's Subpoena to Defendant), and Exhibits 11 and 12 (Defendant's SEC filings). Accordingly, the Court will take judicial notice of those documents and will not consider the remaining documents offered in support of Defendant's motion at this stage.

## IV. ANALYSIS

Defendant has moved to dismiss Plaintiff's Complaint on several grounds. First, Defendant argues that Relator's claims under the False Claims Act[2] are barred by

---

**2.** On March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act, Pub.L. 111–148, 124 Stat. 119. Section 10104(j)(2) of this legislation replaces the prior version of § 3730(e)(4) of the False Claims Act with new language. Because the legislation makes no mention of retroactivity, the Supreme Court held in *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson* that the new provisions would not

apply to "pending cases." 559 U.S. 280, 130 S.Ct. 1396, 1400 n. 1, 176 L.Ed.2d 225 (2010). In *Graham*, the Court relied on its prior holding in *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, in which the Court declined to apply the 1986 amendments to the False Claims Act to cases in which the underlying conduct had occurred prior to the amendment. 520 U.S. 939, 946, 117 S.Ct. 1871, 138

the exclusion under 31 U.S.C. § 3730(e)(4) of cases based on facts previously publicly disclosed. Second, Defendant argues that Relator does not qualify as an "original source" for the purposes of the exception to the public disclosure bar. Third, Defendant argues that Relator has failed to plead his claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). Finally, Defendant argues that Relator has failed to meet the procedural requirements of his state-law claims, which, it argues, would nevertheless be barred by the state-law equivalents of the public disclosure bar. The Court addresses each argument in turn.

### a. Facial Attack on Subject Matter Jurisdiction

Relator's Complaint alleges that Defendant violated the False Claims Act in a number of ways. (Am. Compl. ¶¶ 83–102.) The Medicare Claims Processing Manual cited in the Complaint states that "[a]n item or service is separately billable if its *cost* was specifically excluded from cost data used to calculate the composite rate." (*Id.* at ¶ 33.) (quoting Chapter 8 § 60 of the Manual). Because overfill is free product that imposes no cost on healthcare providers, Relator first contends that overfill administrations may not be billed for reimbursement. (*Id.*) Relator further contends that where Defendant received reimbursement for overfill administrations, Defendant was obligated to disclose and refund such overpayment to the government. (*Id.* at ¶¶ 37–38, 42.)

Accordingly, Relator alleges that Fresenius' submission of claims for Zemplar and Epogen administrations composed of overfill constitutes the submission of false claims and the use of false statements material to those claims. Taking Relator's allegations as true, this Court finds that the knowing submission of a claim that falsely represented acquisition costs would be enough to constitute a false claim in violation of § 3729(a)(1)(A). *See U.S. ex rel. Walker v. R & F Props. of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir.2005) ("To establish a cause of action under the False Claims Act, a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.").

This Court also finds that submission of such claims would constitute use of a false or fraudulent statement in violation of § 3729(a)(1)(B), if, as alleged, the submission of such claims resulted in excessive reimbursement to Defendant. *See Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1327 (11th Cir.2009) (holding that for the purposes of § 3729(a)(1)(B), a complaint must show that "(1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party.").

Relator's second allegation of federal wrongdoing is that Defendant concealed or improperly avoided or decreased its obligation to pay the government by failing to disclose and refund the overpayments it

---

L.Ed.2d 135 (1997). The Court noted in *Hughes* that "[t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* (internal citations omitted). Ac-

cordingly, because Relator's employment with Defendant pre-dated the Patient Protection and Affordable Care Act, this Court applies the statute as it existed prior to the most recent amendments.

received for overfill reimbursements under 31 U.S.C. § 3729(a)(1)(G). Relator bases this claim on his assertion that Defendant has an obligation to "notify Medicare, in its annual cost reports or otherwise, of the overpayment." (Am. Compl. ¶ 38.) Assuming that such an obligation exists, Relator has pled sufficient facts to show that Defendant had "a clear obligation or liability to the government" to refund the overfills in order to state the basis for a reverse false claim under section 3729(a)(1)(G). *See generally U.S. ex rel. Matheny v. Medco Health Solutions, Inc.,* 671 F.3d 1217 (11th Cir.2012) (recognizing the existence of a "reverse false claim" basis of liability under the False Claims Act); *U.S. ex rel. Thomas v. Siemens AG,* 708 F.Supp.2d 505, 514–15 (E.D.Pa.2010) (observing that the purpose of a reverse false claim is "not to provide a redundant basis to state a false statement claim" but to create a separate liability where there is a clear obligation to return overpayment).

Accordingly, construing Defendant's motion as a facial challenge, comparable to a 12(b)(6) motion to dismiss, the Court finds that Relator has sufficiently stated a basis for subject matter jurisdiction over this case, subject to the applicability of the public disclosure bar and original source exception.

#### b. Public Disclosure Bar

Defendant asks this Court to dismiss Relator's claims pursuant to the False Claims Act's "public disclosure" bar. The public disclosure bar states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the ac-

tion is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2008). An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (2008).

■ The Eleventh Circuit dictates a three-step inquiry under the public disclosure bar: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is plaintiff an 'original source' of that information." *McElmurray v. Consol. Gov't of Augusta–Richmond County,* 501 F.3d 1244, 1252 (11th Cir.2007) (quoting *Battle v. Bd. of Regents,* 468 F.3d 755, 762 (11th Cir. 2006)). Considering only those documents offered in support of Defendant's motion that are in the public record, this Court finds that the public disclosure bar does not apply.

■ Regarding the first prong of the public disclosure inquiry, the filing of the *Zwick* and *Woodard* cases and the government's subpoena to Defendant are clearly themselves public disclosures. *Id.* (observing that documents filed with the court are public disclosures under the False Claims Act). Likewise, the information contained in Defendant's SEC filings has been publicly disclosed. *U.S. ex rel. Barber v. Paychex, Inc.,* No. 09–20990–Civ., 2010 WL 2836333, at *8 (S.D.Fla. Jul. 15, 2010) (observing that SEC filings are public disclosures under the False Claims Act). But, the bar operates to preclude only those claims that are based on information publicly disclosed. *Cooper v. Blue Cross & Blue Shield of Florida, Inc.,* 19 F.3d 562, 567 (11th Cir.1994).

With regard to the second prong of the public disclosure inquiry, the Eleventh Circuit's varied interpretations of the bar's "based upon" language leave room for debate. Defendant advances a particularly narrow reading of the Eleventh Circuit's suggestion that "based upon" means "supported by," such that the FCA precludes "suits based in any part on publicly disclosed information." *See id.* Defendant would have the Court find that the documents are public disclosures if any of the facts alleged in Plaintiff's Complaint appear within the alleged disclosures, regardless of how such facts are reported or of Plaintiff's firsthand knowledge of that information. The Eleventh Circuit has held, however, that a public disclosure does not trigger the jurisdictional bar unless the publically disclosed document alleges that a defendant "actually engaged in wrongdoing" involving the specific transactions and matters at issue in the relator's complaint. *Id.* (finding that General Accounting Office's critical report of Blue Cross's payment monitoring processes and conflicts of interest was not equivalent to a finding of wrongdoing and disclosure regarding the allegations at issue in the relator's complaint). Similarly, the Middle District of Georgia noted that the public disclosure inquiry should focus on whether the disclosures "are of allegations of fraud or of fraudulent transactions . . . [that] allege the defendant engaged in the type of wrongdoing alleged in the plaintiff's complaint." *U.S. ex rel. Compton v. Circle B Enters., Inc.,* No. 7:07–32, 2010 WL 942293, at *4 (M.D.Ga. Mar. 11, 2010).

While both the *Zwick* and *Woodard* complaints make mention of overfill use, the Court finds that Relator's Complaint is not "based upon" those disclosures. First, the *Zwick* complaint involves a predecessor company to Defendant—a legally separate entity whose pre-merger litigation cannot be said to have disclosed Defendant's allegedly fraudulent practices. *See*

*Cooper,* 19 F.3d at 567 (holding that the public disclosure bar applies only to information disclosed regarding the same defendant). Second, the *Zwick* and *Woodard* complaints allege fraud based on a distinct theory of liability: namely, that the defendant dialysis centers defrauded the government by certifying compliance with applicable medical standards, when they had, contrary to such standards, re-entered vials of medication intended only for single-use so as to extract extra medicine. Relator's Complaint, in contrast, alleges that Defendant violated the False Claims Act by failing to disclose excessive reimbursement for billed administrations of free medication. Finally, Defendant's SEC disclosures and the U.S. Attorney's subpoena do not contain any allegations of fraud whatsoever. Accordingly, the prior existence of these "disclosures" does not bar Relator's claims under 31 U.S.C. § 3730(e)(4)(A).

### c. Original–Source Exception

While the Court has found that the documents Defendant filed in support of its argument that Relator's information is based on publically disclosed documents are not public disclosures, the Court also alternatively finds that Relator is an original source. The public disclosure bar permits a plaintiff to proceed with a case based on publicly disclosed information if that plaintiff is nevertheless an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A) (2008); *Cooper v. Blue Cross & Blue Shield of Florida, Inc.,* 19 F.3d 562, 568 (11th Cir.1994). An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). In other words, "a plain-

tiff need not establish herself as *the* original source of the publicly disclosed information but must establish that she is *an* original source of the information in that she had direct and independent knowledge of the information on which she is basing her FCA claim." *Battle v. Bd. of Regents,* 468 F.3d 755, 762 (11th Cir.2006).

Relator's Amended Complaint has set forth a sufficient factual basis to support a finding that Relator may qualify as an original source, if the allegations contained therein are taken as true. Relator was an employee of Fresenius, whose professional duties exposed him firsthand to the information underlying the factual allegations advanced in his Amended Complaint. *See U.S. ex rel. Westfall v. Axiom Worldwide, Inc.,* No. 8:06–cv–571–T–33TBM, 2009 WL 764528, at *8 (M.D.Fla. Mar. 20, 2009) (holding that where "Relators were employees of these Defendants and were privy to confidential information about their practices," relators qualified as original sources); *cf. U.S. ex rel. Lewis v. Walker,* 438 Fed.Appx. 885, 888 (11th Cir.2011) (two dairy farmers were not "original source" of information in qui tam action involving a university's grant application, where information was obtained primarily through FOIA and Georgia Open Records Act requests). Plaintiff further avers that he voluntarily disclosed that information to the government prior to filing this action. (Compl. ¶ 7.) Therefore, Relator's Amended Complaint alleges sufficient facts to withstand Defendant's assertion that Relator is not an original source of the information underlying this case.[3] The Court **DENIES** Defendant's motion to dismiss Relator's claims for lack of subject matter jurisdiction.

### d. 9(b) Particularity Standard

Defendant next argues that Relator has failed to plead his fraud claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). This argument, however, is raised only by implication in a single passing mention of Rule 9(b) in Defendant's motion to dismiss. (Defs.' Mot. Dismiss at 1.) Defendant fails to address this issue in its brief and makes no citation to the allegations in Relator's Complaint or to authorities in support of its contention. Accordingly, Defendant's challenge on the grounds of Rule 9(b) merits only cursory consideration.

---

**3.** In its motion to dismiss, Defendant has cited *Rockwell International Corp. v. U.S.,* 549 U.S. 457, 472, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007), for the proposition that a relator is not an original source if he has direct and independent knowledge of the same information that was already publically disclosed. That is not what *Rockwell* states. In *Rockwell,* the Supreme Court discussed whether the phrase " 'information on which the allegations are based' refer[s] to the information on which the *relator's allegations* are based or the information on which the *publicly disclosed allegations* that triggered the public-disclosure bar are based." *Id.* at 470, 127 S.Ct. 1397. The Court adopted the former interpretation, holding that an original source must have independent knowledge of the information on which his own allegations are based—not the publicly disclosed allegations.

*Id.* at 471–73, 127 S.Ct. 1397. Thus, the *Rockwell* Court found that a person who has direct and independent information about transactions involving wrongdoing under the False Claims Act is an original source even if that same information has already been disclosed to the public. The Court went on to find that the relator in *Rockwell* was not an original source with respect to one claim because he did not have direct and independent knowledge of the alleged false claim—instead, he could assert only his earlier *prediction* that the false claim would come to fruition with no proof that it had. *Id.* at 475–76, 127 S.Ct. 1397. The Court did, however, acknowledge the lower courts' findings that the relator had demonstrated the requisite "direct and independent knowledge" over his other claims. *Id.* at 476, 127 S.Ct. 1397. *See also Cooper,* 19 F.3d at 568.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Eleventh Circuit has held that a complaint under the False Claims Act must meet the heightened pleading standard of Rule 9(b). *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009). Accordingly, to withstand Defendant's motion to dismiss, Relator's Amended Complaint must set out the who, what, when, where, and how of the fraud alleged. *See id.* at 1329. In contrast to the particularized standard a complainant must use in alleging the mechanics of the fraud, a complainant may plead the scienter portion of fraud generally. *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (11th Cir.2012); Fed.R.Civ.P. 9(b) (providing that at the pleading stage, "knowledge, and other conditions of a person's mind may be alleged generally").

In *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308–12 (11th Cir. 2002), the Eleventh Circuit held that Rule 9(b)'s particularity requirement applies to both the details of the false claim and the presentment of that claim to the United States for payment. "Rule 9(b)'s directive ... does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.... [A]s with every other facet of a necessary False Claims Act allegation, if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." 290 F.3d at 1311.

The Eleventh Circuit's subsequent cases make clear, however, that a somewhat more flexible, case-by-case approach to *Clausen's* principles may be properly applied where the relator's complaint provides other "indicia of reliability" that support the relator's belief and allegations that the defendant submitted actual fraudulent claims to the government. *See generally Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09–CV–3522–WSD, 2011 WL 2837648, at *3–7 (N.D.Ga. July 14, 2011) (collecting and synthesizing Eleventh Circuit *qui tam* pleading cases). Thus, in *U.S. ex rel. Walker v. R & F Props. of Lake County, Inc.*, 433 F.3d 1349, 1359–60 (11th Cir.2005), the court found that the relator nurse practitioner's complaint properly survived dismissal where the relator's allegations were based on her personal employment experience within defendant's medical practice and her conversations with the office administrator regarding the billing procedures at issue. *See also U.S. ex rel. Matheny*, 671 F.3d at 1230 ("As Defendants recognize, we are more tolerant toward complaints that leave out some particularities of the submissions of a false claim if the complaint also alleges personal knowledge or participation in the fraudulent conduct."); *Hill v. Morehouse Med. Assocs., Inc.*, No. 02–14429, 2003 WL 22019936, at *3, *5 (11th Cir. Aug. 15, 2003) (observing that "Rule 9(b)'s heightened pleading standard may be applied less stringently ... when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control' " and where plaintiff pled sufficient facts as an employee based on her firsthand witnessing of the fraudulent conduct to provide "the indicia of reliability that is necessary in a complaint alleging a fraudulent billing scheme"); *U.S. ex rel. Clausen*, 290 F.3d at 1314 n. 25 (recognizing that the Rule 9(b) standard may be relaxed in "appropriate circumstances to aid those alleging prolonged multi-act schemes" provided the relator

alleges "at least some examples of actual false claims to lay a complete foundation" for the rest of his complaint); *U.S. ex rel. King v. DSE, Inc.,* No. 8:08–CV–2416–T–23EAJ, 2011 WL 1884012, at *1–3 (M.D.Fla. May 17, 2011) (finding that where relator's knowledge of the falsity of the defendant's .certification that defendant's manufactured items complied with contract specifications was based upon his own knowledge and involvement in the manufacturing process, complaint allegations were deemed to afford the requisite reliability to support the relator's False Claims Act claims).

■■■ While employed with Defendant, Relator compiled reports that compared total doses of Zemplar and Epogen administered with total doses in inventory, noting separately the total percentage of overfill used for each drug. (Compl. ¶¶ 63, 71.) According to Relator, his clinical manager informed him that those documents were used as the basis upon which Defendant billed for reimbursement. (*Id.*) Thus, contrary to Defendant's objection, Relator's allegations, as described more fully in the Complaint, set forth a plausible fraudulent billing scheme with sufficient particularity. *See U.S. ex rel. Walker,* 433 F.3d at 1360 (finding that allegations from employee that she had conversations with colleagues about employer's billing practices at issue were sufficient to explain why employee believed employer had actually submitted false claims for services to the government). Therefore, the Court **DENIES** Defendant's motion to dismiss Relator's claims for lack of particularity.

**e. State Law Claims**

Defendant's final argument in support of its motion to dismiss concerns Relator's state-law claims, brought pursuant to seventeen state-law equivalents of the False Claims Act. Specifically, Defendant argues that (1) the state-law equivalents of the public disclosure bar preclude Relator from pursuing his claims, and (2) in any case, Relator has failed to meet the procedural requirements of those statutes. Relator's Amended Complaint establishes that Relator worked in Defendant's Los Angeles South/Nevada Region clinics. (Am. Compl. ¶ 50.) Relator's inventory work was performed in California and Nevada clinics, his reports comparing inventoried to administered doses were generated with data from those clinics, and his conversations regarding the use of overfill data for billing purposes were conducted with management overseeing those clinics.

■■■ While Relator received reports and directives from the national office, his most reliable, firsthand knowledge is based on his work with the Los Angeles South and Nevada Region clinics. Thus, Relator's allegation that Defendant engaged in a "national" fraudulent billing scheme is based on inferences he draws from his experience in two clinics and receipt of national office memoranda, rather than his firsthand participation in billing and drug inventory management on a nation-wide basis or in all of the identified states. For this reason, his complaint provides neither the level of detail nor indicia of reliability required to support his state-law claims against the identified state defendants, with the exception of California and Nevada. Relator's Amended Complaint, therefore, fails to state a claim upon which relief can be granted for claims concerning states other than California and Nevada. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *see also U.S ex rel. Wall v. Vista Hospice Care, Inc.,* 778 F.Supp.2d 709, 723 (N.D.Tex.2011) (dismissing *qui tam* plaintiff's state-law claims where plaintiff provided "no details of the

alleged fraud in those other states"); *U.S. ex rel. Harris v. Alan Ritchey Inc.*, No. C00–2191Z, 2006 WL 3761339, at *6 (W.D.Wash. Dec. 20, 2006) (dismissing *qui tam* plaintiff's state-law claims relating to locations other than job site because "alleged fraudulent activity at one plant does not prove fraudulent activity at another plant").

■ Defendant's motion also contends that Relator's state-law claims should be dismissed because Plaintiff failed to comply with each state's procedural requirements. Specifically, California and Nevada laws require that a *qui tam* plaintiff serve a copy of the complaint and any relevant evidence to each state's Attorney General. *See* CAL. GOV'T CODE § 12652(c)(3); NEV. REV. STAT. § 357.080. Relator avers that he complied with these requirements by providing each state's Attorney General with a copy of the Complaint and all disclosure documents on January 24, 2011. (Pl.'s Resp. Defs.' Mot. Dismiss at 24). While Relator has stated in a responsive pleading that he "provided" a copy of his Complaint to each state's Attorney General, his failure to plead his compliance with serving each state's Attorney General in the Complaint is fatal here. *See generally LaPosta v. Borough of Roseland*, 309 Fed. Appx. 598, 603 (3d Cir.2009) (upholding trial court's dismissal of state-law claims in part on basis that plaintiff did not comply with statute's requirement to serve notice on municipality of tort claim); *Edwards v. City of New York*, No. 10–CV–1047 (ARR)(LB), 2011 WL 5024721, at *6 (E.D.N.Y. Oct. 18, 2011) ("Failure to comply with this condition precedent [of providing notice of claim to state agent] is grounds for dismissing New York state-law claims in federal court."); *Tatum v. City of New York*, No. 06–CV–4290, 2009 WL 1748044, at *8 (PGG)(GWG) (S.D.N.Y. June 19, 2009) (collecting cases and observing that unless defendant has waived pleading requirements regarding receipt of notice, court is required to dismiss state-law claim). Accordingly, the Court **GRANTS** Defendant's motion to dismiss all of Relator's state-law claims.

## V. CONCLUSION

In accordance with the Court's findings above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss Relator's claims. [Doc. 42.] The scope of Relator's claims arising under the False Claims Act are limited to claims relating to Defendant's billing submissions and representations to the United States government connected to Defendant's Los Angeles South and Nevada Region clinics.

Defendant does not oppose Relator amending his Complaint to add a retaliation claim under 31 U.S.C. § 3730(h) that is currently pending in a related proceeding in a California state court. Accordingly, the Court **GRANTS** Relator's motion to amend his complaint to add such a claim. [Doc. 49.] The Court **DIRECTS** Defendant to file its answer to this Second Amended Complaint within 30 days of this Order.