STEVEN D. MERRYDAY, UNITED STATES DISTRICT JUDGE
*1321 Employed in Arizona as a "regional marketing representative" for Florida Pharmacy Solutions, relator Brady McFarland purportedly uncovered through means not explained in the complaint a nationwide scheme by the seventy defendants to bilk Tricare for hundreds of million of dollars. Florida Pharmacy Solutions and six other defendant pharmacies "compound," or mix, ingredients to fill prescriptions for medicine not manufactured by pharmaceutical companies.
The pharmacies allegedly "employed," "partnered," or "contracted" with marketing companies. Each marketing company allegedly cold-called a Tricare beneficiary; if the beneficiary expressed interest in a pain cream, scar cream, or multi-vitamin, the marketing company "connected" the beneficiary to a physician or nurse practitioner. After speaking briefly on the phone with a beneficiary, the physician or nurse practitioner prescribed a pain cream, scar cream, or multi-vitamin. The complaint includes no explanation how the physician transmitted the prescription to a particular pharmacy, but Florida Pharmacy Solutions and the other pharmacies allegedly filled each prescription. Florida Pharmacy Solutions purportedly requested that a physician submit two types of "blanket authorizations." The first authorization allegedly permitted Florida Pharmacy Solutions to add and substitute ingredients at will, a tactic that enabled Florida Pharmacy Solutions to add several expensive but dubious ingredients. The second authorization permitted Florida Pharmacy Solutions to re-fill a patient's prescription without consulting either the prescribing physician or the patient. Under these authorizations, Florida Pharmacy Solutions allegedly included unnecessary ingredients in a prescription.
In addition to alleging medically unnecessary ingredients, McFarland alleges the submission of "legally false" claims. According to McFarland, the physicians and nurse practitioners, the marketing companies, and the pharmacies violated the Anti-Kickback Statute, which prohibits the "knowing[ ] and willful[ ]" solicitation, receipt, offering, or paying of a "remuneration" in exchange for a referral to a provider who may submit to Tricare (or another federal health care program) a claim for payment. 42 U.S.C. § 1320a-7(b)(1)(A). Also, the Anti-Kickback Statute prohibits a remuneration for "purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering" a good or service for which Tricare might pay. 42 U.S.C. § 1320a-7(b)(1)(B). The pharmacies allegedly paid a kickback to the marketing companies for each prescription filled, and in turn the marketing companies allegedly paid a kickback to the prescribing physicians and nurse practitioners for each prescription. Additionally, McFarland alleges that the pharmacies waived co-pays required by Tricare.
In a fifty-three page complaint, McFarland sues (Doc. 12) seven pharmacies, eleven marketing companies, fifty-one physicians and nurse practitioners, and a "related defendant." The complaint groups together the pharmacies (which the complaint designates the "Compounding Pharmacy Defendants"), groups together the marketing companies (which the complaint designates the "Marketing Defendants"), and groups together the physicians and nurse practitioners (which the complaint designates the "Prescribing Teledoctor Defendants"). Count I alleges that "all defendants" violated *1322 31 U.S.C. § 3729(a)(1)(A), which bars "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." Count II alleges that the "Compounding Pharmacy Defendants" and the "Prescribing Teledoctor Defendants" violated 31 U.S.C. § 3729(a)(1)(B), which bars "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." Count III alleges that "all defendants" violated Section 3729(a)(1)(A) by submitting or causing the submission of a claim tainted by a kickback. Count IV alleges that the "Prescribing Teledoctor Defendants" violated Section 3729(a)(1)(A) by submitting or causing the submission of false or fraudulent claims for the telephonic consultations. Finally, count V alleges a conspiracy by all seventy defendants to violate the False Claims Act.
Thirty-two defendants move severally to dismiss the complaint or the action.[1] Four defendants cite the False Claims Act's public-disclosure bar and move to dismiss the action under either Rules 12(b)(1) or (6), Federal Rules of Civil Procedure ; three move under Rule 12(b)(2) to dismiss the action for lack of personal jurisdiction; and twenty-nine move under Rule 12(b)(6) to dismiss the complaint for violating Rules 8(a) and 9(b).[2] Without leave, more than a dozen defendants attempt to "join" or "adopt" the motion of another defendant. Several defendants purport to adopt a motion under Rule 10(c), which permits a motion to adopt a "statement in a pleading." Because a motion is not a "pleading," the unauthorized attempts to adopt the argument in another motion lack effect.[3]
DISCUSSION
1. Motions to dismiss for lack of subject-matter jurisdiction
Prashanth Ramakrishna Rao, M.D., and 1st Care M.D. move (Docs. 204 and 291 at 11 n.3) under Rule 12(b)(1) to dismiss the action and argue that the False Claims Act's public-disclosure bar divests subject-matter jurisdiction. Two defendants move (Doc. 248) under Rule 12(b)(6) to dismiss the action and cite the public-disclosure bar.[4]
Whether under Rule 12(b)(1) or Rule 12(b)(6), the motions to dismiss warrant *1323 denial because no public disclosure permits identifying a particular defendant in this action.[5] In Cooper v. Blue Cross and Blue Shield of Florida, Inc. , 19 F.3d 562 (11th Cir. 1994), the relator alleged that BCBS of Florida knowingly submitted to Medicare several claims that a "Medicare Secondary Payor" law required BCBS of Florida to pay. Two years before the relator sued, a General Accountability Office report described "widespread MSP fraud" and named "other insurance companies," but the GAO report never mentioned BCBS of Florida. Cooper holds that a public disclosure which exposes widespread fraud but which fails to specifically identify the defendant cannot trigger the public-disclosure bar. 19 F.3d at 566-67. Although the disclosures in this record describe similar schemes, none of the disclosures mention or permit identifying specifically a defendant in this action.
Rao questions whether the 2010 amendment vitiates Cooper 's holding. (Doc. 204 at 10-12) Even if the public disclosure of widespread fraud that might include a particular defendant constitutes "substantially the same allegation" as the unambiguous identification of a particular defendant's fraud, Cooper 's reasoning compels the conclusion that McFarland qualifies as an original source under the amended public-disclosure bar.[6] Under Section 3730(e)(4)(B)(2), an "original source" means a person with knowledge "that is independent of and materially adds to the publicly disclosed allegations." Rao argues that the news media and the government reports exposed the ubiquity of the pharmacies' fraud scheme and that the government could "readily identify ... additional [d]efendants" by mining Tricare records. (Doc. 204 at 12) According to Rao and 1st Care, McFarland's identification of the particular doctors and pharmacies that purportedly violated the False Claims Act fails to "materially add to the public disclosures." (Doc. 204 at 12 and Doc. 291 at 13) But the identification of a particular "wrongdoer[ ] is precisely where the government needs the help of [a relator]." Cooper , 19 F.3d at 566. The government "often knows on a general level that fraud is taking place ... [b]ut it has difficulty identifying all of the individual actors." Cooper , 19 F.3d at 566. The identification of a person who allegedly defrauded a program as large as Tricare, which lacks the time and resources to investigate each claim, adds materially to the public disclosure of widespread but not universal fraud against the program. Cf. United States ex rel. Fine v. Sandia Corp. , 70 F.3d 568 (10th Cir. 1995) (Seymour, J.) (holding that the disclosure of pervasive fraud in the nuclear-waste industry constitutes a public disclosure and distinguishing Cooper by observing that "little similarity exists between combing through the private insurance industry in search of fraud and examining the operating procedures of nine[ ] easily identifiable, DOE-controlled, and government-owned laboratories.").
Also, to qualify as an original source under Section 3730(e)(4)(B)(2) the relator must voluntarily provide the information to the government before suing. McFarland states that he voluntarily informed the government about the fraud allegations before *1324 suing, and none of the defendants rebuts McFarland's argument.
2. Motions to dismiss for lack of personal jurisdiction
1st Care, Ankle and Foot Centers of Georgia, and De Novo Investing move (Docs. 243 and 291) to dismiss under Rule 12(b)(2) and argue that neither Florida's long-arm statute nor the U.S. Constitution permits the exercise of personal jurisdiction by the U.S. District Court for the Middle District of Florida.
Under Rule 4(k)(1)(C), the service of a summons "authorized by a federal statute" establishes personal jurisdiction over a defendant. Section 3732(a) of the False Claims Act authorizes nationwide service. ("A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States."). Because the False Claims Act authorizes nationwide service, Florida's long-arm statute is inapplicable.
If the plaintiff serves a summons under Rule 4(k)(1)(A), the Due Process Clause of the Fourteenth Amendment requires sufficient minimum contacts with the forum state. Int'l Shoe Co. v. State of Wash. , 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ; Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, Solano Cty. , 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). If the plaintiff serves the summons under Rule 4(k)(1)(C), the Due Process Clause of the Fifth Amendment limits the exercise of personal jurisdiction. Consequently, when a federal court attempts to exercise personal jurisdiction under Rule 4(k)(1)(C), the "court must ... examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state." Republic of Panama v. BCCI Holdings (Luxembourg), S.A. , 119 F.3d 935, 946-47 (11th Cir. 1997). The three defendants that move to dismiss for lack of personal jurisdiction maintain sufficient contacts with the United States. 1st Care operates in Texas, Ankle and Foot Centers maintains several offices in Atlanta, and De Novo Investing (a citizen of Georgia) operates in Georgia.
When a defendant maintains minimum contacts with the United States, the Fifth Amendment precludes exercising personal jurisdiction only if litigating in a forum imposes on the defendant an extraordinary inconvenience. Republic of Panama , 119 F.3d at 947-48. To establish extraordinary inconvenience, the defendant must submit evidence "to demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient' " that the defendant will suffer a "severe disadvantage" if the litigation proceeds in that forum. Republic of Panama , 119 F.3d at 948 (quoting Burger King Corp. v. Rudzewicz , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ).
Because 1st Care, Ankle and Foot Centers of Georgia, and De Novo submit no evidence that substantiates the constitutional challenges to personal jurisdiction, the Rule 12(b)(2) motions fail.
3. Motions to dismiss for failure to state a claim
A. Claims for telephonic consultations
According to McFarland, each telephonic consultation is false both as a matter of fact and law. A consultation claim is allegedly factually false because each consultation is a sham. (E.g., Doc. 12 at ¶ 149) And a consultation claim is legally false because a kickback allegedly taints each consultation. (E.g., Doc. 12 at ¶ 239) McFarland's allegations about the "consultation *1325 claims" fail to comply with Rules 8(a) and 9(b).
Both factual and legal falsity require the submission of a false claim. As several physicians correctly observe (e.g., Doc. 212 at 15), no facts support the conclusion that a physician or nurse practitioner "actually submitted" a claim for a consultation. In United States ex rel. Clausen v. Lab. Corp. of Am. , 290 F.3d 1301 (11th Cir. 2002), the relator alleged that the defendant submitted false claims to the government, and the district court dismissed the complaint for failing to "identify a single claim that was actually submitted." 198 F.R.D. 560, 563 (N.D. Ga. 2000). Affirming the dismissal, Clausen holds that a relator must allege the amount and date of a false claim or another item of particular information that shows the "actual submission" of a false claim. 290 F.3d at 1309-14. In this action, McFarland fails to allege any fact that suggests the submission by a physician or nurse practitioner of a fraudulent consultation claim. The complaint identifies neither the amount nor the date of a consultation claim and attaches to the complaint neither a bill nor a receipt for a consultation claim. No specific allegation of fact supports the conclusion (Doc. 12 at ¶ 245) that the "Prescribing Teledoctor Defendants" submitted a fraudulent claim for a consultation.
Also, insufficient facts support the allegation of factual falsity, that is, the conclusion that each consultation is a sham. McFarland alleges that each consultation involved a new patient and that the physician consulted by phone with the patient (Doc. 12 at ¶ 5), but the complaint includes no description of what the physician and patient discussed during the consultation or any other information that suggests a sham. Excluding conclusory allegations, the complaint suggests no more than the "mere possibility of misconduct," that is, the possibility that a brief telephone consultation with a new patient might amount to a sham. See Ashcroft v. Iqbal , 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that an allegation "merely consistent with" liability fails to state a claim).
Additionally, McFarland fails to specifically identify a physician who consulted by telephone. Rather, the complaint groups together fifty-one physicians and nurse practitioners and alleges that the physicians and nurse practitioners "often" consult by telephone. (Doc. 12 at ¶ 149) Fifty-two paragraphs in the complaint formulaically allege that a physician in a particular city prescribed a treatment for a patient in another city. (Doc. 12 at ¶¶ 151-202) In some instances, the two live in different states. (E.g., Doc. 12 at ¶ 156) McFarland appears to rely on an inference of remoteness-that a physician and a patient must have consulted telephonically because the two reside in different states. In other instances, the patient and the physician live in the same state and often in adjoining cities. (E.g., Doc. 12 at ¶¶ 152, 194) Absent facts that support the inference, McFarland cannot reasonably infer a telephonic consultation between a patient and a physician who reside nearby. In any event, Rule 9(b) requires McFarland to allege each physician's telephonic consultation with a Tricare beneficiary and the subsequent submission to Tricare of a claim for the consultation.
B. Kickbacks
McFarland alleges kickbacks from the pharmacies to the marketing companies, from the marketing companies to the prescribing physicians and nurse practitioners, and from one pharmacy to another. Also, McFarland alleges that the pharmacies unlawfully waived co-payments.
*1326 Because the payment or receipt of a kickback constitutes a basis for the fraud, Rule 9(b) requires pleading with specificity the details of the kickback scheme. See, e.g., United States ex rel. Keeler v. Eisai, Inc. , 568 Fed.Appx. 783, 798-800 (11th Cir. 2014) (affirming the dismissal of a False Claims Act claim for failure to plead with specificity a kickback). As several defendants observe, McFarland's complaint includes no specific allegations of fact about any kickback, for example, the amount and date of the kickback, the person who sent or received the kickback,[7] or the bank account from which the kickback was sent or received. McFarland repeatedly alleges "[o]n information and belief" that a prescribing physician accepted a kickback from a marketing company (Doc. 12 at ¶¶ 5, 215-16), but a relator cannot base a fraud claim on "information and belief." Clausen , 290 F.3d at 1310 (internal quotation omitted). Rather, the relator must allege the time, the circumstance, and the details of the alleged fraud. See Durham v. Bus. Mgmt. Assocs. , 847 F.2d 1505 (11th Cir. 1989) (explaining that Rule 9(b) protects against "spurious" claims of fraud by requiring specific details about the alleged fraud).
In one instance, the complaint alleges some detail about kickbacks purportedly offered by one defendant. In paragraphs 208 through 210, the complaint identifies by day and by "Rx number" three prescriptions for which Florida Pharmacy Solutions allegedly offered to reduce or to waive a co-pay without regard for the patient's financial need. But McFarland "fails to provide the next link in the FCA liability chain: showing that the [pharmacy] actually submitted reimbursement claims." United States ex rel. Atkins v. McInteer , 470 F.3d 1350, 1358 (11th Cir. 2006) (italics original); accord Clausen , 290 F.3d at 1307-14. An offer to provide remuneration fails to state a claim under the False Claims Act unless accompanied by an allegation that a pharmacy submitted a reimbursement claim after waiving an "unwaivable" co-pay.
1st Care cites Universal Health Serv., Inc. v. United States ex rel. Escobar , --- U.S. ----, 136 S.Ct. 1989, 195 L.Ed.2d 348 (2016), and argues (Doc. 291) that the complaint alleges insufficient facts to show that the United States considers a violation of the Anti-Kickback Statute material to payment.[8] But a False Claims Act claim predicated on a violation of the amended Anti-Kickback Statute need not allege materiality because a violation of the Anti-Kickback Statute presumptively establishes a False Claims Act violation. 42 U.S.C. § 1320(a) -7(b)(g) ("[A] claim that includes items or services resulting from a violation of this section constitutes a false *1327 or fraudulent claim for purposes of [the False Claims Act]."). McFarland alleges two types of kickbacks: first, the exchange of money between the defendants in this action, and second, the waiver of co-pays required by the applicable Tricare regulations. The exchange of money to induce a patient's filling a prescription unquestionably constitutes "remuneration" under the Anti-Kickback Statute. Also, under 42 U.S.C. § 1320a-7(a)(i)(6), remuneration includes the "waiver of coinsurance and deductible amounts."
C. Unnecessary prescriptions
McFarland alleges that no medical necessity motivated the defendants to prescribe or to dispense the pain creams, scar creams, and multi-vitamins. Several defendants argue that each prescription addressed a medical concern, and McFarland responds that the determination of medical necessity "cannot be resolved on a motion to dismiss." (Doc. 298 at 33) Although an order resolving a motion to dismiss must accept the truth of a well-pleaded allegation of fact, the order can (and must) dismiss a complaint that alleges insufficient facts to support a fraud claim. See, e.g., United States ex rel. Boros v. Health Mgmt. Assocs., Inc. , 2013 WL 12077815 (S.D. Fla. Mar. 1, 2013) (Moore, J.) (dismissing under Rules 8(a) and 9(b) a claim that the defendant requested payment for unnecessary services); Flanagan v. Bahal , 2015 WL 9450826 at *5-*8 (D.N.J. Dec. 22, 2015) (Hillman, J.) (same).
According to McFarland, the pharmacies billed Tricare for unnecessary ingredients added "solely" to extract more money from Tricare. But several allegations in McFarland's complaint appear to belie the conclusion that no medical need motivated the prescriptions. For example, McFarland alleges not that the multi-vitamin alleviates no medical need but rather that the efficacy of the multi-vitamin is "highly doubtful." (Doc. 12 at ¶ 115) And McFarland alleges that the pain cream is "likely" ineffective. (Doc. 12 at ¶ 110) If a prescription sometimes serves a medical need, McFarland's allegation of falsity apparently relies on a patient's particular circumstances. Except for three examples in which a patient declines a prescription (Doc. 12 at ¶¶ 137-39), which examples permit an inference that defendants Anjum Qureshi, Jason Beck, and Lorraine De Blanche prescribed a medication that fulfilled no medical need for the particular patient, insufficient facts support the conclusion that each physician prescribed an unnecessary medication.[9]
Also, as several physicians and nurse practitioners observe, the complaint contains several conclusions masquerading as facts. For example, McFarland alleges that "it is impossible that a mere telephone call ... could suffice to determine the medication needed to" treat a scar (Doc. 12 at ¶ 149), but the relator fails to allege why a doctor categorically cannot prescribe a scar cream after a telephone consultation. And the complaint conspicuously omits an allegation that a telephone consultation categorically precludes gathering sufficient information to prescribe a multi-vitamin or a pain cream. In short, McFarland appears to rely on a global and unreasonable inference that telemedicine amounts to a sham.
Additionally, Physician Specialty Pharmacy argues (Doc. 241) that McFarland fails to identify a specific claim submitted by Physician Specialty Pharmacy. In response, McFarland argues that he *1328 "provided example[ ] after[ ]example of medically unnecessary prescriptions submitted by Defendants." (Doc. 298 at 23) McFarland identifies by amount, date, and prescription number fifty-one claims submitted by Florida Pharmacy Solutions and paid by Tricare. (Doc. 12 at ¶¶ 152-202) The allegations might state a claim against Florida Pharmacy Solutions, but no facts allege with particularity a false claim "actually submitted" by another pharmacy. In an action with more than one defendant, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." Ambrosia Coal & Const. Co. v. Pages Morales , 482 F.3d 1309, 1317 (11th Cir. 2007) (citing Rule 9(b) and Brooks v. Blue Cross and Blue Shield of Florida, Inc. , 116 F.3d 1364, 1381 (11th Cir. 1997) ). McFarland cannot satisfy Rule 9(b)'s stringent requirement by grouping together several defendants and alleging with particularity one defendant's submission of a false claim.
Also, the complaint alleges that Florida Pharmacy Solutions "transferred prescriptions" to another pharmacy, "which is believed to have then billed Tricare." (Doc. 12 at ¶ 142) In paragraphs 143 through 148, McFarland lists the "Rx number" of several prescriptions transferred between pharmacies, but, again, McFarland "fails to provide the next link in the FCA liability chain: showing that the [recipient pharmacy] actually submitted reimbursement claims." Atkins , 470 F.3d at 1358 (italics original); accord Clausen , 290 F.3d at 1307-14. The allegation of a "belief" unsupported by specific facts violates Rule 9(b). Clausen , 290 F.3d at 1310. As Physician Specialty Pharmacy argues persuasively (Doc. 241 at 2), the absence of an allegation that a recipient pharmacy filled a prescription and subsequently submitted a reimbursement claim to Tricare requires dismissal.
Citing United States ex rel.Hill v. Morehouse Med. Assocs., Inc. , 2003 WL 22019936 (11th Cir. Aug. 15, 2003), McFarland argues that his "insider" status permits an inference of reliability sufficient to satisfy Rule 9(b).[10] (Doc. 298 at 19-20) For three reasons, Hill cannot salve the defects in McFarland's complaint. First, Rule 9(b) imposes on every fraud claim a particularity requirement and permits no "relaxation" for an insider. Although a person outside a billing department might "have ... to work hard[er]" than an insider to learn specific details about a fraud scheme, "neither the Federal Rules [of Civil Procedure] nor the [False Claims] Act offer[s] any special leniency" to a person who lacks access to specific information about the submission of fraudulent claims. Clausen , 290 F.3d at 1314. Second, Hill purported to "relax" the pleading standard partly because the relator, who worked in the defendant's billing department, directly witnessed the submission of false claims. In contrast, McFarland works as a "regional marketing representative" for one of the seventy defendants in this action. Nothing in McFarland's complaint suggests personal knowledge, either inside or outside, that any defendant other than Florida Pharmacy Solutions actually submitted a false claim. See Corsello v. Lincare, Inc. , 428 F.3d 1008, 1012-14 (11th Cir. 2005) (affirming the dismissal under Rule 9(b) of a relator salesman's complaint because the complaint failed to identify "when, where, and what violations of the False Claims Act occurred"). Third, Atkins clarifies that " Clausen supercedes Hill to *1329 the extent that Hill is inconsistent with Clausen ." Atkins , 470 F.3d at 1358 n.15.
D. Scienter
The False Claims Act subjects to liability a defendant that "knowingly" submits, or causes the submission of, a false claim. Rather than a specific intent to defraud the government, a showing of "actual knowledge, deliberate ignorance, or reckless disregard" satisfies the False Claims Act's scienter requirement. Urquilla-Diaz v. Kaplan Univ. , 780 F.3d 1039, 1058 (11th Cir. 2015). Several physicians and nurse practitioners argue that the complaint fails to allege adequately the "knowing" submission of a false claim. (E.g., Doc. 223 at 9) Although Rule 9(b) excludes scienter from the heightened pleading standard, Rule 8(a) remains applicable. See OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Res. , 851 F.3d 800, 804 (8th Cir. 2017) (Loken, J.) (citing Ashcroft v. Iqbal , 556 U.S. 662, 686-87, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
In opposition to the motions to dismiss, McFarland argues that the physicians and nurse practitioners acted with reckless disregard by "(1) signing up to perform telemedicine consultations," "(2) churning out prescription[s] ... based on brief telephone consultations with patients who were not their primary care patients," "(3) signing pre-filled 'prescription scripts' promulgated by [Florida Pharmacy Solutions]," "(4) signing [blanket letters of authorization] that permitted the other [d]efendants to alter ingredients," and "(5) signing documents that permitted the other [d]efendants to automatically re-fill prescriptions without contacting either the doctor or the patient." (Doc. 298 at 23)
Insufficient facts support the first and second reasons. As explained elsewhere, the practice of "telemedicine" by itself cannot establish a "reckless disregard" for the truth or falsity of a claim for reimbursement based on the telephonic consultation. Third, the complaint contains no mention of "pre-filled" scripts. Fourth and fifth, a physician's signing a blanket authorization to add an ingredient or to re-fill a prescription without the patient's or the physician's consent might amount to reckless disregard, but the complaint fails to identify a physician that signed an authorization. Rather, the complaint alleges that one defendant pharmacy, Florida Pharmacy Solutions, "urges" physicians to sign an authorization. (Doc. 12 at ¶ 9) "Urging" a defendant to sign a document is not "signing a document." McFarland declines to mention by name any physician or nurse practitioner who signed an authorization. In this circumstance, insufficient facts support each basis for knowledge.
Additionally, several defendants argue that the complaint fails to allege adequately a "willful" violation of the Anti-Kickback Statute. For example, defendants Randy Mahon and Jeffrey Durgin argue that McFarland "does not even bother to assert that the 'purpose' of either [ ] Defendant[ ] was to improperly induce referrals or services in violation of the Anti-Kickback Statute." (Doc. 288 at 7-8) To violate the Anti-Kickback Statute, a defendant must "act with knowledge that his conduct was unlawful." United States v. Starks , 157 F.3d 833, 838-39 (11th Cir. 1998) (quoting Bryan v. United States , 524 U.S. 184, 191-92, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) ). Interestingly, the complaint alleges that the pharmacies willfully waived a co-pay in violation of the Anti-Kickback Statute (Doc. 12 at ¶ 238), but the complaint remains silent about a prescribing physician's mens rea.
E. Conspiracy
Apparently an afterthought, the conspiracy claim in count V contains three *1330 paragraphs. First, paragraph 249 "incorporates by reference" the preceding 248 paragraphs-a signature feature of a shotgun pleading. Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp. , 305 F.3d 1293, 1295-96 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."). Paragraph 250 alleges the conclusion that all seventy defendants "knowingly conspired with each other," and Paragraph 251 alleges that the conclusion that the conspiracy harmed the United States.
No well-pleaded allegation of fact shows either an agreement between a defendant and a co-conspirator to defraud the United States or an overt act to further the purported conspiracy. Conceding the claim's deficiency, McFarland requests a dismissal without prejudice so that he can add the claim again after "uncover[ing] additional information" "through discovery." (Doc. 298 at 21) In this circumstance, permitting McFarland an opportunity to allege the claim again risks exposing the defendants to a "baseless" claim asserted to extract a settlement. Clausen , 290 F.3d at 1313 n.24 ; United States ex rel. Karvelas v. Melrose-Wakefield Hosp. , 360 F.3d 220, 230-31 (1st Cir. 2004) (Lipez, J.). The conspiracy claim warrants dismissal with prejudice.
F. False statement or record
Count II alleges that the pharmacies and physicians violated Section 3729(a)(1)(B), which proscribes a person's knowingly "mak[ing], us[ing], or caus[ing] to be made or used a false record or statement material to a false or fraudulent claim." McFarland identifies as a false statement the certification that a medical necessity supported a prescription and that each CMS Form 1500 "was true, accurate, and complete." (Doc. 12 at ¶ 227) But, as several defendants observe, McFarland fails to identify with particularity a false statement or record by any particular defendant. McFarland attaches, for example, no false statement or record to the complaint and fails to identify the date of any statement or record. And McFarland fails to identify the false claim on which the alleged false statement or record relies.
CONCLUSION
For the reasons explained in this order, the motions to dismiss for failure to comply with Rules 8(a) and 9(b) are GRANTED .[11] The motions to dismiss by Ankle and Foot Centers of Georgia and De Novo Investing (Doc. 243), Virtual Healthcare and Complete Health Care Concierge (Doc. 248), and 1st Care MD (Doc. 291) are GRANTED-IN-PART and DENIED-IN-PART . The arguments by Ankle and Foot Centers of Georgia, De Novo Investing, Virtural Healthcare, Complete Health Care Concierge, and 1st Care MD about the public-disclosure bar and the lack of personal jurisdiction fail, but the complaint contains insufficient facts to satisfy either Rules 8(a), 9(b), or both. Rao's motion (Doc. 204) to dismiss under the public-disclosure bar is DENIED .
Count I alleges that all seventy defendants either presented or caused the presentation of a reimbursement claim for a medically unnecessary prescription, but insufficient facts support the conclusions *1331 that each prescription serves no medical need, that each defendant actually submitted or caused the submission of a false claim, or both. The claim in count I is DISMISSED against the movants.[12]
Count II alleges "false statements or records" by fifty-eight defendants, but no facts identify with particularity or otherwise a false record or statement by any particular defendant that underlay a false claim. The claim in count II is DISMISSED against the movants.
Count III alleges "on information and belief" that the seventy defendants in this action either transmitted or received a kickback. Although Rule 9(b) requires a relator to allege specific facts about a kickback, for example, the amount and the day of the kickback, the complaint includes no details about the kickbacks. Also, the complaint lacks sufficient information about several defendants' mens rea. The claim in count III is DISMISSED against the movants.
The allegations in McFarland's complaint and the statements in McFarland's opposition reveal that McFarland lacks both specific knowledge about the submission of a consultation claim and access to information about a physician's submission of a consultation claim. For example, McFarland admits "no control over the Prescribing Telephone Defendants and no access to the record in the possession of the Prescribing Telephone Defendants." (Doc. 12 at ¶ 246) Because McFarland's words evidence the futility of amending Count IV, McFarland may not amend the count. The claim in count IV is DISMISSED WITH PREJUDICE against the movants.
Finally, McFarland concedes the deficiency of the conspiracy claim in Count V and requests an opportunity to amend the complaint after learning through discovery information about the purported conspiracy. For reasons explained elsewhere in this order, the conspiracy claim in Count V is DISMISSED WITH PREJUDICE against the movants.
No later than AUGUST 21, 2017 , McFarland may amend the complaint to resolve the defects identified in this order and in the motions to dismiss. If McFarland elects to amend the complaint, the amended complaint must not include irrelevant facts, legal arguments, recitations of statutes, or otherwise-impermissible allegations. If McFarland amends the complaint, the defendants may respond jointly or severally to the amended complaint no later than SEPTEMBER 21, 2017 .
McFarland sued two years ago. Rule 9(b) imposed from the first day of the action to the present a particularity requirement, and McFarland undoubtedly recognizes the difficulty of alleging with particularity facts that evidence fraud by the seventy defendants. McFarland could have moved for leave to amend the complaint to allege specific facts about each defendant's purported fraud but declined to include more facts. Instead, McFarland's first amendment promiscuously added more defendants to an already tangled web. If the second amended complaint fails to state a claim against a defendant, a further order will not permit McFarland to amend the complaint a third time absent extraordinary circumstances.
ORDERED in Tampa, Florida, on July 24, 2017.

Docs. 195, 204, 212, 215, 216, 223-27, 229-35, 239, 241-43, 248, 253, 266, 268, 275, 282, 288, and 291.

Ghassan Mosen, M.D., includes Rule 12(b)(5) in the caption of a motion (Doc. 215) to dismiss, but the motion contains no argument about insufficient service of process.

Correctly recognizing that a litigant's adopting the argument in another motion often sensibly reduces the volume of papers, Timothy Kwiatowski moves (Doc. 268 at 1) for leave to join Docs. 104 and 204. But, because Kwiatowski's motion later attempts to adopt without leave Docs. 104 and 204, Kwiatowski's dissonant request for leave to adopt the argument in another motion warrants denial.

Before 2010, Section 3730(e)(4)(A) provided that "[n]o court shall have jurisdiction over an action under this section based upon" specified public disclosures. In 2010, the Affordable Care Act amended the public-disclosure bar to provide that "[t]he court shall dismiss an action or claim ... if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a specified outlet. Under the amended Section 3730(e)(4)(A), the public disclosure of a fraud scheme requires dismissal under Rule 12(b)(6) rather than under Rule 12(b)(1). United States ex rel. Osheroff v. Humana, Inc. , 776 F.3d 805, 810-11 (11th Cir. 2015). As 1st Care observes, the amended complaint omits the dates of the alleged fraud, which precludes determining the applicable version of the public-disclosure bar. McFarland allegedly began working at Florida Pharmacy Solutions in 2013, which suggests that the post-2010 version applies.

Under Rule 201(b)(2), Federal Rules of Evidence, this order notices Docs. 201-1 through 204-20 for the purpose of determining whether any document evidences the public disclosure of the fraud scheme alleged by McFarland. See Osheroff , 776 F.3d at 811 n.4 (internal citations omitted).

Under Section 3730(e)(4)(A), an "original source" states a claim despite the public disclosure of the fraud scheme.

In one instance, the complaint identifies "on information and belief" a person who allegedly received a kickback. (Doc. 12 at ¶ 37) Without more information, for example, the amount of the kickback, the day of the kickback, and the circumstance in which the person received the kickback, the allegation fails to satisfy Rule 9(b).

Also, 1st Care correctly argues that Escobar 's demanding materiality requirement applies to the medical-necessity claims. Escobar holds that a defendant's knowing failure to disclose a violation of a statutory, regulatory, or contractual requirement subjects the defendant to liability under the False Claims Act only if the failure is "material" to the government's payment decision. 136 S.Ct. at 2002-04. A non-disclosure materially alters the government's decision if the government would act differently on learning about the non-disclosure (for example, by refusing to pay the claim). Escobar , 136 S.Ct. at 2002-03 & n.5. Although defective for other reasons, the complaint contains sufficient information about the government's response (e.g., Doc. 12 at ¶ 111) to satisfy the materiality requirement at this stage in the litigation.

The complaint confusingly alleges that each prescription was "to be" fulfilled by Florida Pharmacy Solutions (Doc. 12 at ¶ 136), which raises the question whether any defendant actually submitted a claim for the reimbursement of a "rejected" prescription.

An unpublished decision, Hill is not binding precedent under Eleventh Circuit Rule 36-2.

Docs. 195, 212, 215, 216, 223-27, 229-35, 239, 241, 242, 253, 266, 268, 275, 282, and 288.

Several defendants fail to plead or otherwise defend. If the well-pleaded allegations of fact fail to state a claim against a defaulted defendant, an order will deny a motion for a default judgment. See Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank , 515 F.2d 1200, 1206 (5th Cir. 1975) (holding that well-pleaded facts must support a default judgment).